[Civ. No. 9122. First Appellate District, Division Two.—April 2, 1935.]

BEN WADE et al., Respondents, v. WILLIAM R. THORSEN et al., Appellants.

Herbert C. Jones, Lloyd A. Mason and Pillsbury, Madison & Sutro for Appellants.

Rea & Caldwell for Respondents.

STURTEVANT, J.—In the winter season of 1931–1932 plaintiffs were growing a crop of cauliflower on property of plaintiff W. W. Henley, being a part of the lowlands of Santa Clara Valley in an area between the towns of Alviso and Milpitas, and only a short distance from the southern margin of San Francisco Bay. These lands were from seven to nine feet above sea level. The crop was located on land on both sides of Zanker road and west of the Coyote River. Zanker road runs north from the road known as the Alviso-Milpitas road. Defendant Charles Boots owns a farm lying just north of and adjoining the Alviso-Milpitas road, extending from Coyote River on the east to what would be the prolongation southerly of Zanker road, if the same extended south of the Alviso-Milpitas road. Defendant William R. Thorsen owns an orchard adjoining and immediately north of the Alviso-Milpitas road and adjoining and immediately west of Zanker road. The other defendant, Eric Thorsen, is the son of William R. Thorsen and acts as manager of the elder Thorsen in the care of his orchard. Between the Thorsen property and that portion of plaintiffs' crop grown on the west side of Zanker road are two farms, that of B. W. Curtner, adjoining Thorsen, and that of Florence Zanker, immediately north of Curtner, and adjoining plaintiffs' crop. The portion of plaintiffs' crop east of Zanker road lay between the road and Smith slough. Between the Thorsen property and the Coyote River are three farms. The Coyote River is the largest stream flowing into Santa Clara Valley and is subject to torrential floods. It drains an area of more than two hundred square miles and empties into San Francisco Bay. During the rainy season floods occur and become most aggravated when a second heavy rainfall follows close after a first rainfall which has already saturated the earth where it cannot absorb and hold further precipitation. Such conditions occurred in December, 1931. Through the ages the floods which came down the Coyote River overflowed the banks of the stream depositing silt on either side. This deposit has gradually raised the bed of the river so that the river "rides" above the surrounding country, similar in this respect to the bed of the Colorado River in Imperial Valley and the Sacramento River in Colusa, Yolo and Sutter basins. To guard against

the floods of the Coyote the defendant Boots and his father
before him, year by year heightened and strengthened the
levee along the west bank of the Coyote. The father of de-
fendant Boots first constructed a levee about the year 1860,
since which time it has gradually been strengthened year
after year. As early as 1906 he put in concrete retaining
walls constructing therein three concrete spillways, which
spillways in going upstream are designated for the purpose
of this action as overflow gate No. 1, gate culvert or tunnel,
and overflow gate No. 2. Overflow gates 1 and 2 are in the
form of weirs or notches cut in the top of the bank, pro-
tected on the outside by concrete foundations and concrete
aprons. They are regulated by removable flashboards. The
culvert located between the two overflow gates is in the form
of a tunnel about six by six feet in dimensions, lined with
concrete and piercing the bank. It is controlled by a gate
which lets down from the top.

█ It is the settled law in this state that the liability of
one who installs, maintains or operates structures to protect
his property against flood waters depends on whether the
acts of the owner of such structures were reasonable under
the circumstances. (*Jones* v. *California Development Co.*,
173 Cal. 565, 576 [160 Pac. 823, L. R. A. 1917C, 1021].)
But the pleadings did not put in issue and the court made
no finding on said subject matter. However, the plaintiffs'
amended complaint contained an allegation that the de-
fendants negligently piled sacks of sand for the purpose of
diverting said waters upon their said lands. But it was not
alleged that said sacks of sand were placed in the Coyote
River.

The action was tried by counsel on two wholly conflicting
theories. The defendants contended that waters were dis-
charged through the Barber break, overflow gate No. 1, gate
culvert, and overflow gate No. 2, overspread the territory,
intermixed, and all more or less flowed over the lands of the
plaintiffs. They also contended that the waters from over-
flow gate No. 1, gate culvert, and overflow gate No. 2, were
released solely for the purpose of preserving the levees of
the defendant Boots from being broken. They further con-
tended that if the boards had not been removed the flood
waters were so high they would have flowed, and did flow,

at an elevation above the tops of the boards before the boards had been removed. On the other hand, the theory of the plaintiffs was that the action of defendants on the evening of December 27, 1931, was taken for the purpose of irrigating the lands of defendants; that no waters except those from the gates and culverts caused the damage; that the defendant Thorsen by digging ditches, by making and in-installing dikes of sacks filled with sand, and by making and placing dams of boards, led and diverted the waters from two overflow gates and the gate culvert, and caused such waters to flow westerly to the lands of Thorsen and then negligently allowed said waters, in large quantities, to flow and discharge upon the lands and plants of the plaintiffs to their damage, etc. There was evidence introduced from which the trial court could have adopted either theory. It adopted the theory of the plaintiffs and made findings in their favor.

■ Although the plaintiffs joined as defendants William R. Thorsen, the owner of one tract of land, Eric Thorsen, his manager, and Charles Boots, the owner of another tract of land, in one action, the proof introduced does not show all defendants acted jointly. On Saturday, December 26, 1931, the Coyote River was running large quantities of water. The defendant Boots opened overflow gate No. 2. He also opened the gate culvert about half-way for the purpose of irrigating his land. None of that water flowed over the land of the defendant Thorsen nor onto the land of the plaintiffs. The next day the Coyote River was at flood tide. It was overflowing on the easterly side but such waters did not overflow the lands on the westerly side of the river. On the evening of that day the defendant Thorsen asked permission to release overflow gate No. 1. He was given permission to remove one board. There is evidence he removed all of the boards. At that time there was a break further down stream and water was flowing westerly at least to Smith slough. Even after overflow gate No. 1 was opened the waters did not in large quantities flow to the Thorsen property. To cause them to flow there in a quantity suffi-cient to irrigate his property the defendant Thorsen and his agents placed the dams and dikes and thus diverted the waters which flowed over the land of the plaintiffs. But

there is no evidence that the defendant Boots participated in installing any part or portion of said dams and dikes nor that he negligently caused or allowed water to flow through or over his said outlets. It follows that finding number III: "That on said 27th day of December, A. D. 1931, said defendants, for the purpose of irrigating their said lands, negligently and carelessly diverted the waters of the Coyote creek upon their lands; that they negligently piled sacks of sand along said San Jose-Alviso Road for the purpose of diverting waters upon their said lands; . . . " is too broad. Whether the Coyote was at flood tide or at ordinary tide, whether the defendant Boots took the water out of the Coyote or out of a well, he was entitled to irrigate. If the Coyote was at flood tide and about to destroy his restraining levees he was entitled to protect his levees. But he was not entitled to act so negligently as to injure another. There is no evidence that he did any negligent act. It follows that as to him the judgment must be reversed.

We pass now to the case as presented by the defendants William R. Thorsen and Eric Thorsen and, in using the expression "defendants" it will be understood that we are speaking of the case as presented by those defendants. They contend that the trial court erred in finding III that defendants diverted flood waters on December 27, 1931, for the purpose of irrigating their lands and that said finding is not supported by the evidence and is against the law. A like contention is made that the court erred in finding number X, that only an inconsiderable amount of water would have flowed over any of the spillways on the Boots property and that the flood waters of the Coyote would not have damaged the plaintiffs' crop had not the defendants diverted water by removing boards from flood gates on the Boots property. In so far as the attack on finding number X is concerned, defendants admit there is a conflict in the evidence but argue that the evidence supporting the finding of the trial court is "contrary to immutable physical laws" and they support this contention by referring to certain maps introduced in evidence and the testimony of a surveyor called by defendants showing that water from portions of the Coyote, other than from gate No. 2, actually overflowed and that such waters must have overflowed the land of the plaintiffs because of the contour of the land.

712

■ Without doubt innumerable cases support the proposition of law that a reviewing court will set aside the finding of the trial court, or the verdict of a jury, when such finding or verdict is based either upon evidence inherently improbable or when there is physical impossibility of the evidence being true. (*Austin* v. *Newton,* 46 Cal. App. 493 [189 Pac. 471]; *Neilson* v. *Houle,* 200 Cal. 726 [254 Pac. 891].) The record in this case does not present facts calling for the application of that rule. It shows a substantial conflict in the evidence not only as to finding number X but as to finding number III, and, this being true, the reviewing court will ·not disturb the finding of the trial court. In this connection it must also be borne in mind that upon stipulation of counsel the trial judge viewed the premises and it is well settled that "the knowledge gained by the court from a view of the premises is independent evidence to be taken into consideration in determining the issues of the case." (*Hatton* v. *Gregg,* 4 Cal. App. 537 [88 Pac. 592]; *Vaughan* v. *County of Tulare,* 56 Cal. App. 261 [205 Pac. 21].) From all the evidence in the case we believe the trial court was justified in its findings in the particulars mentioned.

■ Defendants further contend they had a legal right to divert the flood waters in order to lessen the strain on the Boots levees; that their action was reasonable, and even assuming, only for the purpose of argument, that the crops of plaintiffs were damaged by their acts, such damage is *damnum absque injuria.* They cite many cases. None is helpful on the real question before us. In the case at bar the damages claimed arose not from building the levees, from maintaining them, nor from opening the gates; but, after they had been opened the manner in which the water was diverted and discharged on plaintiffs' land. In other words, the evidence shows that at the time in question, namely, December 27, 1931, defendants deliberately opened overflow gate No. 2 so as to irrigate the land of defendant Thorsen and then negligently failed to ·control such waters but allowed them to go beyond the Thorsen land and overflow the cauliflower crop of plaintiffs. From all the testimony in the case it is reasonable to assume that the trial court did not form the opinion that defendants loosened the waters over the spillway of gate No. 2 in an effort either

to protect the Boots property or to deal with the flood waters as a common enemy but that the water was deliberately caused to flow over the spillway to help defendant Thorsen irrigate his land, and that the attempted defense of dealing with the water as a common enemy was not in the minds of the defendants at the time of opening gate No. 2.

Defendants contend that, as defendant Boots built the levees, he could legally authorize these defendants to take out water in order to protect the levees. But the trial court has found such was not the purpose of the acts of the defendants.

The last point raised is that when the evidence shows damage results from an independent cause as well as from the action of defendants, plaintiffs must show what portion of damage is attributable to the acts of defendants and that it is error under such circumstances to hold the defendants liable for all of the damage. We agree with the principle of law stated. (*Learned* v. *Castle*, 78 Cal. 454 [18 Pac. 272, 21 Pac. 11].) However, as we have shown above, the trial court found that no independent cause was involved.

As to the defendant Charles Boots, the judgment is reversed. As to the other defendants, the judgment is affirmed. The defendant Boots will recover his costs on appeal. As against the other defendants the plaintiffs will recover their costs.

Nourse, P. J., and Spence, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 29, 1935.