REDD v. AIRWAY MOTOR COACH LINES, Inc., et al.

No. 6472.   Decided May 17, 1943.   (137 P. 2d 374.)

See 5 C. J. S., Appeal and Error, sec. 1780; 14 R. C. L., 804.

Rehearing denied July 23, 1943.

*D. N. Straup, Willard Hanson,* and *Stewart M. Hanson,* all of Salt Lake City, for appellant.

*Harley W. Gustin, Robert A. Burns,* and *Alton C. Melville,* all of Salt Lake City, for respondents.

McDONOUGH, Justice.

Plaintiff sued defendant corporation and Emeron E. Wall as driver of a motor bus, for alleged wrongful death of plaintiff's son, Harold Stuart Redd. Plaintiff claimed death was caused by negligence of defendants in the operation of said bus. The jury returned a verdict in favor of defendants, "no cause of action."

On this appeal, plaintiff assigns the following errors: (1) Insufficiency of the evidence to sustain a verdict for defendants; (2) errors in instructions and in refusal of the trial court to instruct the jury in accordance with plaintiff's requests; and (3) alleged misconduct of the jury prejudicial to plaintiff. To determine whether the verdict is contrary to the evidence, we shall first consider the evidence produced by plaintiff and his witnesses.

On June 6, 1939, plaintiff resided on the south side of Center street in Provo. On the west of the house there is a driveway 12 feet in width extending to the street. Center street has a center lawn park strip 21 feet in width. The paved area on the south side of this strip is about 20 feet

wide from curb to curb, and it is used only for eastbound traffic. The north paved strip for westbound traffic is about the same width. The curb which separates the pavement from the lawn park strip in the center of the street is about 6 inches high. Extending over the curb on the south side of the street connecting with the driveway to the Redd home is a cement culvert 14 feet 3 inches in length. From a point 1 foot west of the center of the culvert there is an expansion strip which extends across the pavement. The cement pavement slabs are about 30 feet long and they are separated by expansion strips. The public sidewalk adjoins onto the south curbing of Center street.

Plaintiff's son, Harold Stuart Redd, a little over 12 years of age, borrowed a bicycle from a neighbor boy on June 6, 1939, and took it over to his father's home. About 5 P. M. on that day, the passenger bus of defendant corporation, operated by defendant Wall, was making its regular trip east to the Utah State Hospital. As the bus on its eastbound trip reached a point about 100 feet west of the Redd driveway, Harold rode the bicycle north on the driveway toward the street. As he reached the sidewalk, the bus which then had not reached the driveway quickly swerved toward the northeast so that the tires on the left side of the bus scraped along the park curbing for about 9 feet when the left front wheel went over onto the lawn. About 31 feet farther to the east, at a point which is about 3 feet 4 inches west of a line extended from the center of the Redd driveway over to the park curbing, the right front wheel of the bus went over the curb onto the lawn. The lawn was wet at the time and the bus made rather deep tracks which made it easy to trace the course of the bus in a northeasterly direction across the lawn.

Several witnesses saw Harold turn toward the east after crossing the sidewalk at about the middle of the culvert. The bus passed between them and Harold as it came over the lawn so they did not see him fall from the bicycle. One witness saw him crouched on his hands and knees, then

fall on his back to the pavement, his head being about a foot south of the park curb, said point being about 28 feet east of the center line of the Redd driveway and a little more than 31 feet east of the point at which the left front wheel of the bus came over onto the lawn.

No one saw the bus strike the bicycle or the boy or saw the boy run into the bus. The plaintiff testified that there was a dent on the rear mudguard of the bicycle which shows a glancing blow from the left; that the dent is at a point which corresponds with the height of the front bumper of the bus. Cross-examination disclosed the fact that the bumper is slightly curved, whereas the dent in the mudguard is a sharp dent. The theory of plaintiff is that the bus struck the bicycle at an angle on the rear mudguard, throwing both the bicycle and the boy forward more than 30 feet. While the left handlebar of the bicycle was bent out of line and the steering post was turned, the frame was not sprung and the wheels do not appear to have been injured. The first witnesses who appeared on the scene stated that part of the bicycle was lying on the right leg of the boy. Owen Heninger, owner of the bicycle, testified that previous to the accident there were some dents, but that the rear mudguard was not bent as close to the tire as he found it after Harold's death.

There was variation in the testimony of plaintiff's witnesses as to the speed of the bus and as to whether its horn was sounded. One witness said she estimated the speed at 35 to 40 miles per hour, while other witnesses for plaintiff testified the bus was going rather slowly or at a moderate rate of speed. The photographs taken the following day support the testimony that the bus did not travel on the pavement east of a point 3 feet 4 inches west of the center line of the driveway, and that the bus traveled to the northeast over the lawn.

A Dr. Clark testified that the boy suffered a depressed fracture to the frontal and parietal bones and also a basal skull fracture. On cross-examination he testified the basal

skull fracture could have been caused by a blow on the forehead, and that a point of impact was probably on the forehead. Death occurred a few moments after the fractures were sustained. The boy had no other broken bones.

The day following the accident, plaintiff and his counsel took some measurements, and in doing so, not only observed a pool of blood where the boy was found lying on the pavement, but blood spots were also found about 11 feet west of the point where he was found, and one spot of blood was found 12 feet east of the point at which the right front wheel of the bus went over the curb onto the park lawn.

On denial of defendants' motion for nonsuit, defendants produced evidence in support of their contention that the bus struck neither the boy nor the bicycle. Defendant Wall testified that he saw Harold Reddon on a bicycle in the driveway about 60 feet south of the public sidewalk peddling to the north, when the bus was about 100 feet west of the driveway. He said he sounded the horn and applied the air and reduced the speed from 25 to 18 miles per hour; that Harold was peddling fast, with his head down, apparently giving no heed to the approach of the bus; and that when Harold cycled into the street he turned his bicycle to the east. He testified further that as Harold crossed the culvert over into the street the brakes of the bus were further applied and the bus was turned sharply to the northeast over the curb onto the park lawn to avoid colliding with the boy. Wall testified emphatically that he saw the bicycle strike the curb after the bus was entirely on the lawn, and that Harold went over the handlebars but did not fall onto the lawn. The point of impact of the bicycle with the curb was several feet west of where Harold fell on the pavement. Wall testified that the bicycle never came over onto the lawn at all, and that at the time the bicycle struck the curb of the park lawn the bus was at least 12 feet to the north and about 12 to 15 feet to the west of the place where Harold fell. His testimony was corroborated by a witness riding

on the bus, and it was substantiated in part by another passenger.

Evidence was also offered to show that the bus was not equipped to operate faster than 25 miles per hour on the upgrade it was traveling at the time. When called on to explain why he did not stop immediately when he swerved the bus over the curb and onto the lawn, he testified that in going over the curb one of the diaphragms connected with the airbrakes was injured with the result that the breaking power thereby was considerably reduced. He also offered proof that the wheelbase of the bus is so short that if he had turned as quickly as he did at the particular angle, at a speed in excess of 25 miles per hour the bus would have overturned.

Under the evidence adduced as thus outlined, it is clear that the verdict is sustained by the evidence. The jury very well could have believed from the testimony and the photographs that the boy did not come in contact with the bus, for the reason that the bus traveled entirely on the park lawn after its right wheels reached a point 3 feet 4 inches west of the center line of the Redd driveway. The jury also could properly have believed that the bus driver turned onto the lawn in an effort to avoid hitting the boy and that he was not traveling at an excessive rate of speed. Furthermore, it cannot be said, as a matter of law, that the driver of the bus was guilty of negligence in acting as he did under the circumstances. This matter will be further considered presently in connection with the instructions of the court.

Appellant contends that the court erred in its charge to the jury and in denying certain requests for instructions. We are frank to say that some portions of the instructions complained of are not models, but the alleged incompleteness of some instructions was cured by giving others. The charge to the jury must be considered as an integrated whole. The jury was instructed by the trial court to so consider them, in the following language:

"These instructions are to be construed and considered together, as a whole, and each instruction should be read and understood with reference to and as a part of the entire charge, and not as though each instruction were intended to present the whole law of the case on any particular point."

Some of the requests of plaintiff were embodied in substance in the charge to the jury, and hence he cannot predicate error on the failure of the court to follow the exact language of the requests. *Nelson* v. *Arrowhead Freight Lines, Ltd.,* 99 Utah 129, 104 P. 2d 225.

An assignment of error challenges the giving of an instruction which charged the jury that a person riding a bicycle on the public streets of Provo

"must observe the same rules for the use of said streets that apply to drivers of vehicles, except when by their very nature they are inapplicable; and riders of bicycles upon said streets and every person driving a vehicle shall drive as closely as practicable to the right hand edge or curb of the street except when overtaking or passing another vehicle or bicycle, or when placing a vehicle or bicycle in a position to make a left turn. And in this connection if you believe from a preponderance of the evidence that Harold Stuart Redd failed in his duty in this regard and that such failure on his part was the proximate cause of the accident herein complained of, or proximately contributed to said accident, then his father cannot recover in this action against the defendants."

The first paragraph of such instruction states the provisions of an ordinance of Provo which was introduced in evidence. Error is also assigned on the court's refusal to give plaintiff's request No. 6, which relates to the same subject-matter, but purports to apply the rule enunciated in the instruction of the court to the facts and circumstances in the case.

It must be conceded that the mere recital of the provisions of the ordinance and a statement that a violation thereof constituted negligence, was of little aid to the jury under the circumstances presented to them by the evidence. On the other hand it was not error to refuse

appellant's request. Such request would invite the jury to determine

"whether it was practicable for him to ride to the right hand edge or curb of the street, or whether in view of the approaching bus, it was safer for him and better to avoid collision with it to ride across the street to the left hand edge or curb, and whether from the very nature of things and under all the facts and circumstances in the case, the provision of the ordinance referred to was, in view of the approaching bus, applicable to a rider of a bicycle upon his immediate entrance in the street at the place in question."

This request ignores the duty of the rider of a bicycle to so enter the street as to place himself in a position to comply with the ordinance, and suggests, in spite of its provisions, that it might be due care to drive across the path of the oncoming bus to the north side of the street, should the jury determine that the rider intended to go westward along the same.

Although we do not approve the instruction as given, nevertheless no misstatement of the law was made therein, and in view of the other instructions given and of the entire record, we are satisfied that the jury was not misled thereby.

Appellant complains most vigorously of instruction number 13, wherein the court charged that if the jury found the driver of the bus "was suddenly confronted with an emergency by reason of acts and conduct of the deceased," that in such event the driver was not required to use "the same degree of care or caution as would be exacted of him in the absence of the existence of such an emergency and his acts and conduct are to be measured by the acts and conduct of an ordinarily prudent person placed in the same or similar circumstances;" and that if the driver "made a mistake in judgment" or "chose a course that would under such circumstances be considered unwise," he would not be guilty of negligence. The instruction was predicated on finding that the driver operated the bus at a proper and legal rate of speed and otherwise exercised "due care under all the conditions and circumstances."

Appellant denies that there was an "emergency situation," and he contends that the "positive duties" of the driver to keep the bus under control at all times required the bus to stop if necessary to avoid a collision. However, as hereinabove indicated, there was evidence from which the jury could find that the driver of the bus, while exercising due care, at the time he observed the boy on the bicycle, was suddenly confronted by an emergency. If they so found, then they were told that the driver would not be negligent if in such circumstance he acted as a reasonably prudent person. This was not error. As aptly stated in *Dobrow et al.* v. *Hertz et al.*, 125 N. J. L. 347, 15 A. 2d 749, 751:

"It is true that when one is faced with a sudden emergency, not caused by his own tortious conduct, the law does not charge him with actionable negligence if, in the making of a hasty decision between two alternative courses of action, he does not exercise or select the wisest course and succumbs to an honest mistake of judgment. The law merely requires that conduct which is reasonable to expect of him under the circumstances. But it is equally true that it is for the jury to determine whether an emergency existed and whether he acted with the care required of him under the circumstances."

It cannot be said as a matter of law that in the exercise of due care, defendant Wall should have immediately applied the brakes upon seeing the boy on his bicycle in the driveway; nor was the jury compelled by the evidence in this case to conclude that said defendant was not driving with due care prior to that time. The giving of the instruction was not error.

The plaintiff also seeks reversal for alleged misconduct of the jury. We shall consider both specifications of misconduct to ascertain whether any prejudice to the plaintiff resulted therefrom. Though the actions complained of were improper, unless they resulted in prejudice to the appellant, the verdict will not be disturbed.

After the case was submitted to the jury, and while the jurors were at lunch in the custody of the bailiff, one of the

jurors asked the bailiff about the outcome of the previous trial of this cause. He replied that he did not know. Thereupon one of the other jurors stated that he had read in the Provo Herald that the "plaintiff had been awarded $1500 and that a new trial had been granted * * * at the plaintiff's request because of the insufficiency of said verdict."

While it was improper for the jurors to discuss the former trial or to be concerned with its outcome, there is no showing that any possible harm could have resulted to the plaintiff. Mere proof that a juror or jurors read a newspaper account of the trial in progress or an account of a former trial of the same cause, without showing that the complaining party could be prejudiced thereby, will not justify granting a new trial. *Forsythe* v. *Thompson's Estate,* 157 Mich. 669, 122 N. W. 219; *Ft. Wayne Iron & Steel Co.* v. *Parsell,* 49 Ind. App. 565, 94 N. E. 770; and *Meyer* v. *Cadwalader,* C. C., 49 F. 32. The newspaper article in question not only showed that plaintiff was awarded a verdict, but the statement of the juror concerning it indicated that the trial judge thought a $1,500 verdict was inadequate. It is difficult to see how knowledge of the information thus conveyed could possibly prejudice the plaintiff's case; and palpably, where the possibility of prejudice is not even vaguely discernable, it will not be presumed.

Counsel for defendants requested the court to permit the jury to view the premises after being properly admonished, and he read to the court section 104-24-19, R. S. U. 1933, (U. C. A. 1943), the statute relative to view by a jury. The court specifically consulted counsel for plaintiff: "What is your idea, Mr. Hanson?" Counsel replied: "I think the jurors know the place, but I think it would be proper for Mr. Johnson [the bailiff] to go with them, pointing out the place." The court then ordered that a "view of the premises be had by the jury and that they be taken by the sheriff or deputy of this county under the direction of

Mr. Johnson, court bailiff, who will escort them there and return them here after they are through the view."

Notwithstanding the request of counsel for defendants, no admonitions nor cautions were given. While viewing the premises the jurors evidently did what they thought they were supposed to do. Counsel for respondents contend that because counsel for plaintiff did not join in the request for proper cautions and admonitions, the appellant is in no position to complain about what happened as a result of failure to give timely and proper instructions. Furthermore, respondents assert that plaintiff has shown no prejudice, and that the response of plaintiff's counsel to an inquiry from the court showed indifference to such an extent as to constitute a waiver of admonition. In *P. A. Sorenson Co.* v. *Denver & R. G. R. Co.*, 49 Utah 548, 552, 164 P. 1020, 1021, the court admonished the jury, but in urging a motion for new trial the appellant claimed the court failed to give a sufficient admonition. In considering appellant's assignment relative to the instruction given, this court said:

"At the trial, on the conclusion of the testimony, the jury, after being admonished by the trial judge as to the purposes, were permitted to view the premises. Plaintiff contends that the trial judge failed to properly and sufficiently admonish the jury as to the purposes of the view, and thereafter failed to charge the jury as to what weight they should give to the knowledge attained thereby.

"The record discloses that counsel for plaintiff was present in court. He made no objection whatever as to the jury not being properly admonished, nor did counsel request that more implicit instructions be then given. It will be seen, therefore, assuming that there would be some merit in the contentions of counsel, that it was due the trial court that they be presented at a time when they could have been considered and acted upon before the conclusion of the trial, not on motion for a new trial, nor on appeal to this court.  *  *  *"

The rule so announced is here applicable and appellant is in no position to urge a reversal solely on the failure of the court to admonish the jury.

In support of his motion for a new trial, plaintiff filed the affidavits of three of the jurors and of the bailiff rela-

tive to the conduct of the jury at the time they were engaged in viewing the scene of the accident. The substance thereof is as follows: That while they were on the premises viewing the same a discussion was had by the jurors in the presence of the bailiff as to the evidence in the case and especially as to the distances testified to by witnesses; that some of the jurors, by stepping off distances, made some measurements as to matters testified to and especially as to the following: (1) The distance that the deceased traveled on the bicycle after coming onto the street; (2) the distance the bus traveled along and upon the parking; (3) the distances from where the body of deceased was lying after the accident to various points and objects referred to in the evidence; (4) the point at which the bus went over curb onto the parking; (5) the distances from where the wheels of the bus went onto the parking to the place where it stopped; and (6) the distance from the point at which the deceased went into the street to the place where he was supposed to have been lying when he was picked up. One of the jurors went down the driveway and stepped off some distances along the same. The affidavit of one of the jurors avers that "the measurements so taken and made * * * were used by the jurors in making up the verdict that was rendered."

Appellant contends that the court abused its discretion in refusing to grant a new trial because the described conduct of the jury amounted to taking evidence out of court; that such conduct is improper and compels the award of a new trial. His argument is untenable. There was no material dispute as to measurements nor as to the relative location of objects, nor as to the course taken by the bus after it went over the park curb. The affidavits do not indicate that the jurors did more than to step off distances testified to by the witnesses to ascertain the position of the various points and objects. There is no evidence of independent investigations on the part of the jurors, nor any conduct tending to manifest a disposition to disregard the testimony of the wit-

nesses; nor, indeed, to add thereto. The affidavits of the jurors show nothing more than an attempt to locate the points and positions testified to at the trial.

The very purpose of obtaining a view of a scene of an event or the premises in controversy is to enable the jurors to see surroundings and the physical objects in relation to each other in order to better understand the testimony of witnesses. The statement of one of the jurors that ■ the jury "used the measurements so taken" in arriving at the verdict is not equivalent to an assertion that they gave any weight at all to any measurement which might have deviated from testimony deduced relative thereto; nor that there was any deviation. Such assertion is entirely consistent with the idea that the distances testified to, concerning which there was no substantial conflict in the evidence, and the observations made by the jurors as aided by stepping off various distances, were discussed by the jurors in arriving at their verdict. We therefore are not called upon to determine whether, in the event the jurors had actually "taken evidence" at the place of view, their conduct in so doing would have constituted prejudicial error. To the effect that it would not, see *Brugger* v. *Lee Yim,* 12 Cal. App. 2d 38, 55 P. 2d 564 (hearing denied by Supreme Court) ; *Ethel D. Co.* v. *Industrial Acc. Comm.,* 219 Cal. 699, 704, 28 P. 2d 919; *People* v. *Pompa,* 192 Cal. 412, 423, 221 P. 198; *Wade* v. *Thorsen,* 5 Cal. App. 2d 706, 712, 43 P. 2d 592, and *Gray* v. *Magee,* 133 Cal. App. 653, 24 P. 2d 948. See also 3 Jones on Evidence, sec. 1410-1415.

In denying the motion for a new trial on the ground of misconduct on the part of the jury, the trial court did not abuse its discretion, even assuming that on the showing made a contrary ruling could be sustained. The judgment is affirmed. Costs to respondents.

WOLFE, C. J., and LARSON, MOFFAT, and WADE, JJ., concur.