269 P.2d 295

**HOWARD**

v.

**RINGSBY TRUCK LINES, Inc., et al.**

No. 8030.

Supreme Court of Utah.

April 26, 1954.

66

Wendell C. Day, City Atty., Murray, Fabian, Clendenin, Moffat & Mabey, Salt Lake City, for appellant.

Stewart, Cannon & Hanson, Salt Lake City, for respondents.

WOLFE, Chief Justice.

Appeal by the plaintiff from an order of the lower court granting defendants' motion to dismiss an action brought by her against defendants for wrongful death of Francis A. Howard and Allen Howard, her husband and son, respectively. The motion was granted at the conclusion of the presentation of the plaintiff's evidence upon

the ground that she had failed to show any negligence of defendants which was a proximate cause of the accident or of the death of Francis A. Howard and Allen Howard.

Fatal injuries were sustained when the Willys pickup truck, hereafter called a jeep, which deceased Francis A. Howard was driving and in which deceased Allen Howard was a passenger, struck the side of a bridge over Red Creek on U. S. Highway 40, in Duchesne County, went out of control, and collided with the defendants' truck on defendants' side of the highway.

The sole issue is whether under the evidence, viewing it in the light most favorable to plaintiff, a reasonable man could find that the defendant truck driver was negligent in failing to avoid colliding with the jeep. Unless he was so negligent, the defendants cannot be liable on any theory for the death of either deceased.

On October 19, 1951, Francis and Allen Howard left Salt Lake City in the jeep with the intention of hunting deer in Eastern Utah. Several brothers of Francis, their wives, and children, were proceeding to the same general area in different vehicles, and during the journey east on Highway 40 other relatives and friends joined them. Lloyd Howard, a brother, his wife and child, were the last members of the party to see Francis and Allen Howard. Lloyd stopped at Current Creek on Highway 40 to observe some deer, and Francis and Allen stopped also. Lloyd then proceeded ahead in his Studebaker sedan, and

he last saw Francis in his rear vision mirror just before he reached Fruitland, a short distance from the scene of the accident.

In the immediate area of the accident Highway 40 runs in a northwesterly and southeasterly direction, through a ravine. At the bottom of the ravine is Red Creek Bridge. The road approaching the bridge from the southeast along which defendants' truck was traveling in a northwesterly direction, makes a turn around the side of a mountain, provides approximately 800 feet visibility southeast of the bridge, and proceeds downhill at a grade of approximately 6%. The road approaching the bridge from the northwest along which the deceased were traveling in a southeasterly direction, comes up over the crest of a ridge, then proceeds downhill at a grade of from 7.3% to 3.6% in the immediate vicinity of the bridge. The oiled surface of the highway is 22 feet wide, but it narrows down to 20.4 feet over the bridge. Near the southeast end of the bridge is a turnout area for traffic traveling in a northwesterly direction.

At the time of the accident, mid-day on October 19, 1951, the weather was clear and the road was dry.

As Francis Howard and his son crossed over the Red Creek Bridge, the jeep scraped the southeast corner of the bridge, proceeded across the highway, and collided on the north edge of the oiled surface of the road at a point 225 feet southeast of

the bridge with the right front portion of a truck driven by defendant Byington and operated by defendant Ringsby Truck Lines, Inc.

There is no evidence as to the speed of the jeep just prior to the accident or why the jeep struck the bridge.

Leading from the southeast corner of the bridge, tire marks and a line made by some liquid extended down the south side of the highway for approximately 75–100 feet and then cut across to defendants' side of the highway to the point of impact.

The defendants' truck, a tractor and trailer combination was 53 feet, 6 inches in length and loaded with high explosives, gross weight being 60,090 pounds. Defendant Byington, the driver of the Ringsby truck and the only eyewitness surviving the accident, was not called as a witness; however, several individuals testified as to what Byington said to them shortly after the accident. Glen Wing, a radio technician for the State Highway Patrol, testified that Byington stated his speed was 45 miles an hour as he approached the bridge, and that "he [Byington] observed this pickup truck as it hit the abutment of the bridge and then continued on down the highway and that is the last he saw of it." Other witnesses quoted Byington as follows:

Lloyd Howard—"He saw the jeep hit the bridge. He didn't see it again." Brady Howard—"It looked like it hit the corner of the bridge and went out of control and it cut across, cross-wise, across the road and he didn't see it any more until he felt the impact." Dale Howard—"He saw the jeep truck hit the bridge; he figured it hit the bridge and it came across the road until it hit his truck."

Inspection of the road southeast of the point of impact revealed no evidence of brake marks made by defendant's truck, which traveled approximately 135 feet after impact and stopped at the north edge of the turnout area after being empaled by heavy boulders.

The jeep was knocked northwest approximately 86 feet from the point of impact, and it came to rest 15 feet to the rear of defendants' truck. Francis Howard was entombed in the burning jeep; Allen Howard was thrown clear, but he died on the way to the hospital.

Plaintiff first contends that defendant Byington was negligent in failing to stop the Ringsby truck short of the point of impact. She maintains that the jury could reasonably have found that neither deceased Howard nor defendant Byington applied his brakes before the impact; that the jeep and the Ringsby truck were both traveling at the rate of 45 miles an hour; that the accident occurred 225 feet from the southeast corner of the Red Creek Bridge, placing the vehicles equidistant from the point of impact at the time the jeep struck the bridge; that at the rate of 45 miles an hour, each vehicle would be

traveling 66 feet per second, and a total of 3.43 seconds would elapse between the time the jeep hit the bridge and the time of impact; that at a speed of 45 miles an hour, allowing for the three-fourths of a second which is necessary for an average driver to react to an obvious warning, the Ringsby truck could have been stopped in 180 feet; that defendant Byington, acting with due care under the circumstances, should have reacted to the danger created when the jeep struck the bridge, immediately applied his brakes within the three-fourths of a second reaction time, and the Ringsby truck could have been stopped 45 feet before the point of impact, avoiding the accident.

 To be sure, when Byington saw the jeep strike the bridge and go out of control, it became his duty to avoid colliding with it if he could do so in the exercise of reasonable care under all the circumstances. It must be borne in mind, however, that Byington was faced with a sudden and unexpected happening—and emergency—not caused by his own tortious conduct, and consequently he is relieved of the same coolness of judgment which would be required of him in the absence of an emergency. 1 Blashfield Cyclopedia of Automobile Law and Practice, part 2, page 553; Morrison v. Perry, 104 Utah 139, 122 P.2d 191; Redd v. Airway Motor Coach Lines, Inc., 104 Utah 9, 137 P.2d 374.

The rule is stated in Restatement of the Law of Torts, Comment b, page 796, as follows:

" * * * The law does not require of the actor more than it is reasonable to expect of him under the circumstances which surround him. Therefore, the court and jury in determining upon the propriety of the actor's conduct must take into account the fact that he is in a position where he must make a speedy decision between alternative courses of action and that, therefore, he has no time to make an accurate forecast as to the effect of his choice. The mere fact that his choice is unfortunate does not make it improper even though it is one which the actor should not have made had he had sufficient time to consider all the effects likely to follow his action."

 Considering all the facts and circumstances surrounding the accident, we conclude that as a matter of law Byington exercised that degree of care required of him. The Ringsby truck which he was driving was a tractor-trailer combination, loaded with high explosives. Violent application of the brakes might have caused the load to shift or the vehicle to jackknife and result in an explosion. Because of the course taken by the jeep after it struck the bridge, as evidenced by the tire marks and liquid which extended down deceased's side of the highway for 75 to 100 feet past the bridge and then cut

abruptly over to defendants' side of the highway, it would not be immediately apparent to Byington when the jeep struck the bridge that a collision was imminent since the jeep was on its own side of the highway for that 75 to 100 feet. Manifestly, the situation was fraught with danger, but because each second modified pre-existent conditions, it was unlike a situation where the danger is fixed and a reasonable man would immediately and violently apply the brakes as the only course calculated to avoid a collision. Human reactions are not instantaneous and the time required to react varies according to the nature of the danger and the surrounding circumstances. Redd v. Airway Motor Coach Lines, Inc., supra. Further, there is a complete lack of evidence concerning the speed of the jeep. Plaintiff's hypothesis that the jeep was traveling at the rate of 45 miles per hour is based purely on speculation. Even if we assume that the jeep was traveling at a reasonable speed, there is nothing in the record indicating that a speed of 60 miles per hour or 88 feet per second would be unreasonable. If such was the case, the jeep traversed the distance from the bridge to the point of impact in just 2.56 seconds. During this brief interval, Byington had to react to the danger, determine a course of action and stop a truck traveling 45 miles per hour. We are in accord with the following apropos statement made by the court in Rollison v. Wabash R. Co., 252 Mo. 525, 160 S.W. 994, 999:

"* * * To predicate negligence on two seconds of time is in and of itself a monumental refinement. We cannot adjudicate negligence on such pulse beats and hairsplitting, such airy nothings of surmise."

The following testimony of plaintiff's expert witness on cross-examination points up an additional reason why the evidence will not support a finding of negligence on the part of Byington:

"Q. Of course, Doctor, in a situation, assuming Doctor that the driver of this truck is coming down that grade and sees ahead of him going east, he is traveling west, see ahead of him a jeep truck or a vehicle hit a bridge and go out of control and travel along the shoulder of the highway for some distance before it suddenly cut over to his side of the road, in addition to reaction time wouldn't you also have perception time? In other words, wouldn't that person first have to see the emergency which would take him the reaction time that was there and then form a judgment as to what he was going to do about it? Wouldn't you have that in there too? A. You mean to take time for him to make up his mind just what he wanted to do?

"Q. Yes. In other words, he would have this reaction time; it would take him the reaction time to see the thing and realize what was happening and then you would also have a little more

time for him to judge or perceive what he was going to do about it? A. He might need time to do that, yes.

"Q. And if you have judgment time it might be two or three seconds? A. Well, he might not apply the brakes at all, which might be many seconds.

"Q. In other words, if he had a large load of explosives and he sees the vehicle coming and isn't sure which way it finally might go it might take him two or three seconds to decide what to do about it? A. It would take time. It might take him two or three seconds.

"Q. In other words, you have what you would call judgment time? A. I would call it judgment time."

If we allow Byington but a single second for "judgment time" in addition to the three-fourths of a second normally allowed for reaction time, the Ringsby truck would have traveled an additional 66 feet during that second and made the earliest point at which it could have been stopped 21 feet beyond the point of impact.

■ Plaintiff contends that the fact that the truck virtually ran over the jeep, the distance the truck and jeep traveled after the collision, and the damage done to the Ringsby truck when it collided with the boulders which stopped its forward motion, are circumstances from which the jury could infer that the Ringsby truck was being driven at an unreasonable and excessive speed. While these factors are not necessarily inconsistent with lawful speed considering the relative size and weight of the vehicles, even if we assume that a jury could find that the speed of the Ringsby truck was unlawful, this would not establish liability, since, as pointed out above, the accident would have happened if the speed of the Ringsby truck had been lawful. This precludes a finding that excessive speed was a proximate cause. 4 Blashfield Cyclopedia of Automobile Law and Practice, part 2, page 110.

Plaintiff argues that since the jeep collided with the right front half of the Ringsby truck and the point of impact was on the north edge of the highway, the jury could have found that had Byington kept the truck under control and maintained a proper lookout, the collision could have been avoided simply by his turning the Ringsby truck three or four feet to the left. Plaintiff cites a series of cases in which vehicles were traveling in opposite directions, the plaintiff was over the center line onto defendant's side of the highway, and the question was "whether the defendant was negligent in failing to turn his car slightly to his *right* and thereby avoid a collision." (Emphasis added.) Farrell v. Cameron, 98 Utah 68, 94 P.2d 1068, 1071. The rule of law announced in the Farrell case is as follows:

"It is our opinion that every driver who is taking reasonable care in driving his car will not stop to consider

for even a moment whether the other driver is on his side of the road or not, where, as here, *he has ample time and space to do so,* but will move over and not take a chance, and avoid a collision." (Emphasis added.)

We have pointed out that Byington was proceeding with reasonable care when confronted with an emergency caused by plaintiff's vehicle being on the wrong side of the highway, and it appears that the defendant did not have "ample time and space" to avoid the collision. Certainly in an emergent situation where a hasty decision is required it is unreasonable to expect a driver to act in a manner which differs from normal human judgment under like circumstances, and require that he instantaneously respond in accordance with the wisest course, and turn his vehicle to the *left* onto deceased's side of the highway.

█ Viewing the evidence most favorable to plaintiff, we are unwilling to hold that, in the circumstances disclosed, a reasonable man could find that Byington was guilty of actionable negligence. The showing of a mere possibility that the accident might have been avoided is insufficient. An appropriate statement is found in Rollison v. Wabash R. Co., supra, as follows:

"If, as has been wisely said by a great authority on the philosophy of the law, 'Law is beneficence acting by rule,' then courts must conform to established rules in order that law be beneficent. We but adhere to established rules in negligence cases in holding as announced. Look at it as we may, if that sympathy for the widow, which, we confess, is not to quite run away with reason, the judgment was right. Let it be affirmed."

The judgment below is affirmed. Each party to bear his own costs.

McDONOUGH, CROCKETT and HENRIOD, JJ., concur.

WADE, Justice.

I dissent. I agree that the evidence should be viewed in the light most favorable to plaintiff but think the prevailing opinion fails to do that and so reaches a wrong result.

The evidence discloses that the accident occurred about 225 feet southeast of Red Creek Bridge on a dry, clear day. The bridge is in a ravine with the highway sloping toward it from both directions, the jeep approaching from the northwest struck the south abutment of the bridge and floundered out of control, at first on its right-hand side and after about 75 to 100 feet it crossed onto its left-hand side of the highway until it collided with the truck. The truck driver could see the bridge and the road leading to it for 800 feet, and he did see the jeep strike the bridge and go out of control according to his statements

to witnesses immediately after the accident, but after it had floundered onto his side of the highway he did not see it again until after he felt the impact with his truck. There is no evidence of any brake marks of either vehicle prior to the impact but there were marks of the wheels of the jeep as it floundered between the bridge and the point of impact.

The prevailing opinion admits that the situation was fraught with danger after the jeep hit the bridge but because it remained on its side of the road for 75 to 100 feet thereafter says "it was unlike a situation where the danger is fixed and a reasonable man would immediately and violently apply the brakes as the only course calculated to avoid a collision." With this I do not agree. If the driver saw the jeep hit the bridge and go out of control when, as I will later demonstrate, it was probably much more than 450 feet away, it would seem that there would be only one appropriate course to take and that would be to get this truck safely stopped before the two vehicles reached each other. When the truck driver knew that the jeep was floundering on the road out of control, to continue on his course because it was temporarily not on his side of the road seems to me to be entirely inappropriate procedure, and I believe that 90% of drivers would think the same way. There was evidence tending to show that this truck could have been brought safely to a stop within 130 feet after the brakes were applied,

and that allowing the driver .75 of a second for reaction time would make 180 feet after the jeep struck the bridge. If both cars were traveling 45 miles per hour and continued to maintain that speed up to the impact, 3.43 seconds would elapse between the time the jeep struck the bridge and the impact and if the driver had brought the truck to a stop within 180 feet it would have been 45 feet before the point of impact. The prevailing opinion suggests that there is no evidence of the speed of the jeep and therefore we should use 60 miles per hour for the jeep instead of 45 since that would have been a lawful speed. This seems to be viewing the facts in the light most unfavorable to the plaintiff. I believe that a mind acting reasonably from the evidence, there being some evidence indicating that the jeep was not traveling at an excessive rate of speed, could find that it was traveling not in excess of 45 miles per hour. If that is correct we must not take a view of the evidence which is unfavorable to plaintiff and assume that it was traveling 60 miles per hour.

Further, it is very improbable that the jeep continued to maintain the same rate of speed after it struck the bridge. If the driver was conscious, his natural reaction would be to stop and see if his jeep had been damaged and to enable him to gain control of his vehicle, and whether conscious or not, it seems very improbable that he would continue to feed it gas and maintain its speed while floundering for 225

feet. The striking of the bridge, the fact that the jeep was floundering out of control while traveling uphill all would tend to reduce its speed and it seems remarkable that it traveled as far as 225 feet. If it was as I suspect practically stopped at the time of the collision, it would take almost twice as long to travel that distance as it would if it maintained the speed it was traveling when it hit the bridge. So instead of 3.43 seconds it would take several seconds more than that even if it was traveling 60 miles per hour as suggested in the prevailing opinion instead of 45, which would put the truck a few hundred feet farther away when the jeep struck the bridge.

Another thing which tends to give more time is the fact that if the truck driver had reduced its speed and stopped it before it reached the point of impact it would have taken approximately twice as long for it to reach that point after applying the brakes as it would if there was no reduction in its speed. Every reduction in the speed of the truck after the jeep struck the bridge would proportionately increase the time which would pass between the time the jeep struck the bridge and the time of impact and lessen the probability of a collision. Yet according to the evidence the driver completely lost sight of the jeep and evidently forgot all about it shortly after it struck the bridge and went out of control, until he felt the impact. I think the evidence, if viewed in the light most favorable to plaintiff, will amply sustain a finding that the driver was negligent and that his negligence proximately caused the accident. Of course I realize that we only have plaintiff's evidence and that defendant's evidence might change the picture but we cannot now anticipate his defenses.