462 P.2d 159

Dale W. DeMILLE, Administrator of the Estate of Terry Lee DeMille and Constance Hope DeMille, also known as Connie DeMille, deceased, Plaintiff and Respondent,

v.

Phyllis ERICKSON, Administratrix of the Estate of Frederick Kenneth Spendlove, deceased, Defendant and Appellant.

No. 11385.

Supreme Court of Utah.

Nov. 28, 1969.

Arthur H. Nielsen, Salt Lake City, J. Harlan Burns, Cedar City, for respondent.

CALLISTER, Justice.

This action arose as a consequence of a grinding head-on collision on Highway 91, approximately 15 miles south of Cedar City, Utah. There were no survivors and no eye witnesses. Plaintiff, the administrator of the estate of Terry and Constance DeMille, husband and wife, commenced this wrongful death action against the estate of Frederick Kenneth Spendlove. During the course of the trial, at the close of the evidence, both parties moved for a directed verdict. The court found that all the testimony indicated the collision between the two cars occurred near the center of the highway, but there was no question that the DeMille vehicle, operated by Terry DeMille, was two to four feet over the center line at the point of collision on a bright, clear day. The court ruled that Terry DeMille was negligent, as a matter of law, in the operation of his vehicle, i. e., he failed to keep a proper lookout and drove on the wrong side of the road, where there was an approaching automobile. However, the court submitted to the jury the issue of the negligence of Spendlove in the death of Constance DeMille. The jury returned a verdict in the amount of $23,000 for her wrongful death. Defendant appeals and seeks a reversal of the

Don J. Hanson, of Hanson & Garrett, Salt Lake City, John L. McCoy, Milford, for appellant.

judgment of the trial court or in the alternative a new trial.

The record reveals that there are very few facts concerning this action. There was evidence that Terry DeMille intended to seek employment in Las Vegas, Nevada. The DeMilles were observed entering a service station in Cedar City on the morning of August 11, 1965, at approximately 6:30 to 6:40 a. m. The Highway Patrol received notice of the accident, at 6:55 a. m. There was no evidence presented in regard to Spendlove, but evidently from the sparse facts, it was concluded that the DeMille vehicle, a Chevrolet, was traveling south, and the Spendlove vehicle, a Volkswagen, was traveling north on the two-lane highway. There was a five-inch segmented white line dividing the highway and a solid four-inch yellow line in the west lane (the southbound lane). Both vehicles were found on the east side; Spendlove's Volkswagen was off the pavement, and the DeMille's Chevrolet was located approximately in the center of the east lane.

Two investigating officers of the Highway Patrol were called as witnesses, William R. Burch and Robert J. Reid; they testified as to the physical evidence they observed and to the opinions they formed therefrom. They were unable to estimate the speed of the vehicles, but the speed limit was 60 miles per hour. Officer Burch estimated that from the scene of the accident there was a visibility of 300 to 400 yards toward the south, and that as he approached the scene from the north he could observe the vehicles for several hundred feet or maybe several hundred yards. No explanation was proffered as to the purpose of the solid yellow line in the west lane, nor its relative length in relationship to the vicinity of the accident. There was no physical evidence to indicate that the driver of either vehicle took any evasive action prior to the collision.

The two officers testified extensively about the marks and gouges upon the highway surface. However, all of this physical evidence occurred subsequent to the moment of impact of the vehicles. The scuffs and gouges nearest to the approximate area of the initial impact were within the east lane of the highway; the skid marks appearing in the west lane occurred after the vehicles disengaged and were spinning out of control prior to their proceeding to their final positions. Plaintiff has placed great emphasis on the first mark made upon the highway surface; it is a scuff mark about 20 inches wide and approximately 60 inches from the center line, which was apparently made by the right front tire of the Volkswagen as it left striations in the pavement and then ultimately collapsed. (The Volkswagen was 60 inches wide and 56 inches from tire to tire.) A measurement from this scuff mark indicated that the Volkswagen at that

moment was ½ to 2½ inches onto the eastern side of the five-inch white line. Plaintiff has urged that this constituted evidence that the decedent, Spendlove, was not in his own lane. Officer Burch was of the opinion that the Volkswagen changed direction upon impact, which placed it closer to the center line than it previously was. Officer Reid was of the opinion that the Volkswagen did not change direction until after the initial marks were made. Neither officer could identify the exact positions of the vehicles at the moment of impact. A careful reading of the record reveals that there is an insufficient amount of evidence to determine as a matter of fact whether the Volkswagen was actually on the white line, although admittedly close to it. A choice of probabilities creates only a basis for conjecture on which a verdict of a jury cannot stand.[1]

Officer Burch further testified that it was his opinion that the Chevrolet was three to four feet across the white line at the time of impact; that the area of impact did not extend over the white line; and that he did not find any evidence to indicate the Volkswagen was on the wrong side of the road. Officer Reid expressed no opinion as to these matters.

On appeal, defendant contends that the trial court erred by failing to direct the verdict in favor of the Spendlove estate. Defendant asserts that plaintiff had the burden of proving his right to recover by a preponderance of the evidence, and that it was not within the province of the jury to indulge in mere speculation or conjecture with respect to the issue of negligence. Since there was no evidence produced at the trial in regard to the acts and conduct of the deceased, Spendlove, prior to the collision, and the events leading up to the accident were unknown, defendant claims there was no competent evidence upon which the trial court could submit the issue of Spendlove's negligence to the jury.

■ There was a presumption, based on the instinct of self-preservation, that the deceased, Spendlove, was exercising due care for his own safety; this presumption may take the place of evidence sufficient to make a positive finding in the absence of other evidence.[2] However, once the opposing party produces a prima facie case as to the nonexistence of this presumed fact, the presumption disappears. It is a question for the court whether a prima facie case has been established. If the court concludes that the opposing party has failed to produce sufficient evidence to overcome the presumed facts and such facts are dispositive of the case, the court should direct a verdict in accordance

1. Alvarado v. Tucker, 2 Utah 2d 16, 19, 268 P.2d 986 (1954).

2. Compton v. Ogden Union Ry. & Depot Co., 120 Utah 453, 457, 235 P.2d 515 (1951).

therewith.[3] In the instant action the trial court erred by instructing the jury on the presumption that Spendlove exercised due care; either the presumption disappeared or the court should have directed the verdict in favor of the defendant. The latter alternative was the correct course.

Defendant further contends that the trial court erred by submitting to the jury in Instruction 24, five separate issues upon which they could predicate negligence on the part of Spendlove, namely, that it was his duty to maintain a proper lookout; to keep the car under reasonably safe and proper control; to drive as nearly as practicable entirely within a single lane and not to move from one lane to another until he has ascertained that he could do so with reasonable safety; to keep his automobile on his own right side of the highway; to turn his vehicle to the outside of the highway to avoid a collision. Defendant asserts that this instruction consisted of mere abstract propositions of law, which were unconnected to the issues involved, and that there was no competent evidence to which the jury could apply them.

* * * the duty of an automobile driver, who is on the right side of the street, to stop or take other precautions to avoid a collision with an approaching vehicle, only arises when by due care he discovers that another on the wrong side of the street cannot or will not himself turn to the right to clear his way. It follows that his right to assume that the other driver will comply with the laws of the road is not absolute, but may be qualified by the particular circumstances, such as the other vehicle's proximity, position and movement and the condition of the road, including the usable width.[4]

Plaintiff's entire case is predicated on the assumption that Spendlove had ample *time* and *space* to avert the accident;[5] there is no evidence in this regard. One may only speculate as to the circumstances immediately prior to the collision, i. e., did the DeMille vehicle suddenly swerve to the left; was the DeMille vehicle obscured by another vehicle, which DeMille was commencing to pass while the yellow line was in his lane; did either vehicle have a sudden mechanical failure; did DeMille observe the Volkswagen in the west lane and incorrectly conclude that it could not return to the east lane in time so DeMille swerved to the east; or was DeMille, as contended by plaintiff, cruising down the east lane for a sufficient time and distance that Spendlove in the exercise of due care should have taken appropriate evasive action?

3. Tuttle v. Pacific Intermountain Express Co., 121 Utah 420, 429, 431, 242 P.2d 764 (1952); Mecham v. Allen, 1 Utah 2d 79, 85, 86, 262 P.2d 285 (1953).

4. 2 Blashfield Cyclopedia of Automobile Law and Practice, § 919, pp. 97–98.
5. Howard v. Ringsby Truck Lines, 2 Utah 2d 65, 71, 72, 269 P.2d 295 (1954).

■ Instruction 24 permitted the jury to speculate as to the circumstances prior to the accident; any evasive action which it may have been Spendlove's duty to take would be dependent upon factors which were not in evidence. The trial court erred in giving Instruction 24, which merely advised the jury about abstract principles of law, which had no relation to any issue or evidence in the case.[6]

■ In the instant action, from the evidence adduced there is no basis upon which reasonable minds could find that the decedent, Spendlove, abrogated his duty of due care in the operation of his motor vehicle, which proximately caused the death of Constance DeMille. "The showing of a mere possibility that the accident might have been avoided is insufficient."[7] The trial court erred by its denial of defendant's motion for a directed verdict.

TUCKETT and HENRIOD, JJ., concur.

ELLETT, Justice (concurring).

I concur with Justice Callister and in doing so would emphasize the fact that the only evidence that the Volkswagen was ever across the center line of the highway is that one of its tires made the mark numbered 2 on the picture submitted by the Chief Justice in his dissenting opinion.

The force of the impact was so great that the Volkswagen was knocked backward for a considerable distance and was initially rotated in a counter-clockwise direction, as is shown by the scuff mark indicated on the picture as point numbered 1. The gouge mark at point numbered 6 is north of the point of impact and shows that the movement of that part of the Volkswagen which made it was being forced towards the center line of the highway. The fact that after the car hurtled through the air one of the wheels landed a few inches across the center line is no evidence whatsoever that the car was across the center at the time of impact.

The dissenting opinion would take consolation for its position in measuring from the *center* of the U turn marked as point 1 in the picture. This is not proper. Since the Volkswagen was, upon impact, pushed towards the center of the highway, the measurement must be from the easternmost edge of the U. Measurement from this correct point places the outside edge of the left front tire four inches from the middle of the center line of the highway; and since the outside of the Volkswagen overhangs the tire by only two inches, the widest part of the Volkswagen at the time of

---

6. Stapley v. Salt Lake City Lines, 18 Utah 2d 214, 418 P.2d 779 (1966); Morrison v. Perry, 104 Utah 151, 160, 140 P.2d 772 (1942).

7. Howard v. Ringsby Truck Lines, footnote 5, supra, at p. 72, 2 Utah Reports, 2d, 269 P.2d at p. 300.

impact was exactly two inches east of the middle of the center line of the highway.

The question of who was at fault in causing this terrible accident can be determined only by knowing where the cars were at the time of impact. There is not even a scintilla of evidence that at and prior to the collision the Volkswagen was elsewhere than in its proper lane of travel.

CROCKETT, Chief Justice (dissenting).

I dissent based on these propositions:

(1) As I view this record there is a reasonable basis in the evidence to justify the trial court in submitting the issues to the jury, as he did; (2) therefore to justify the jury in finding the issues for the plaintiff, as it did; (3) that in my opinion the reversal of the judgment is an unwarranted intrusion into the prerogatives of the jury and of the trial court; and (4) that it deprives the plaintiffs of their right of trial by jury and unjustly takes from them a judgment which in all fairness they are entitled to.[1]

It is true that in this situation where everybody in both cars were killed and there were no eyewitnesses to the accident there are difficulties in ascertaining the facts.

Nevertheless, where the results are so tragic and have such a serious impact on the lives of survivors, one should not simply give up in frustration, but earnest efforts should be made, as has been done here, to use such evidence as is available to determine what happened.

In preface to reviewing the facts, it seems necessary to again reiterate basic rules of review: the reviewing court should assume that the jury believed those aspects of the evidence and drew such reasonable inferences therefrom as will support their verdict; and on the other hand should not select particular aspects of the evidence which would disagree with the jury verdict, and base a decision thereon. Looked at in that light, the physical evidence and the testimony of the officers provide a reasonable basis from which the jury could have viewed the facts as I discuss them below.

It seems to be assumed that because both cars came to rest on the east side of the highway after the collision that it was the DeMille Chevrolet (plaintiff) going south which was on its wrong (east) side and there can be no recovery on behalf of its driver, the husband. But if he was negligent, that would not be imputed to his wife

1. As to Right to Trial by Jury see: Gibbs et al. v. Blue Cab Inc., 122 Utah 312, 249 P.2d 213; Newton v. Oregon Short Line R. Co., 43 Utah 219, 134 P. 567, 570; Stickle v. Union Pac. R. Co., 122 Utah 477, 251 P.2d 867; Right to Civil Jury Trial in Utah, 8 Utah Law Review (1962 Winter).

as a passenger. If her death resulted from the concurrent negligence of her husband and of the driver of the Volkswagen (Spendlove), her children should be able to recover from the latter. Therefore the critical question here is whether there is any substantial evidence to support the verdict of the jury finding negligence on the part of Spendlove. This resolves itself into the question: was there evidence that he encroached on or over the center line onto his wrong (west) side of the highway?

From the best analysis I can make of the testimony and the physical evidence as indicated in the pictures which show the cars in the positions they came to rest, and the markings on highway, it is my judgment that there is not only substantial, but ample, basis in the evidence to justify the

jury in believing that the Volkswagen was over the center line and on its wrong (west) side of the highway. This is clearly to be seen in the accompanying picture and the testimony referring to the points marked No. 1, No. 2 and No. 6 thereon.

The picture is looking south. The Volkswagen, overall width 60 inches, was traveling north. The point marked No. 6 is described as a gouge mark. Officer Reid stated it was made at the point of "maximum impact" between the vehicles by the

undercarriage, or frame of the Volkswagen. It is adjacent to and runs into the center line. If it was made by the undercarriage of the Volkswagen, which is not only the officer's testimony, but seems to be the most reasonable deduction, then the left front wheel and fender of the Volkswagen would be further west, thus extending to a foot or more over the center line. This is firmly corroborated by the point marked No. 2. It is a tire scruff mark beginning one foot five inches *west* of the center line and running southeasterly across the highway to where the Volkswagen left it. Officer Burch explained that it was made by the tire of the Volkswagen, and being pressed as to his certainty about the matter stated:

Q   Was there any question in your mind as to the vehicle that made that mark?

A   No.

Q   Nothing was left to your opinion or conjecture?

A   No.

The third significant physical mark on the highway in the collision area, indicated as No. 1, is also consistent with the conclusion I have stated above, though admittedly giving a slightly different measurement. The testimony is that it was a tire scruff mark, made by the right front wheel of the Volkswagen; and that from the middle of it westward to the center line is 49 inches. If it be assumed that the wheel was approximately in the center of the scruff mark at the time of impact, that would still put the Volkswagen (60 inches wide) several inches over the center line.

I am appreciative of the fact that other views may be taken of the evidence. But I cannot see how the foregoing facts can be ignored, nor how the proposition can be gainsaid that they provide a reasonable basis upon which the jury could have believed, as it apparently did, that the Volkswagen was over the center line and thus at least concurrently at fault in causing the collision.

In regard to the instructions: They told the jury the duties imposed by law: of keeping a lookout ahead, of keeping car under control, and of keeping on the right side of the highway, which *if* found to be violated, *and* proximately causative, would be a ground for recovery. This impresses me as having been carefully fashioned upon the evidence and reasonable inferences that might be drawn therefrom and as properly and correctly presenting the plaintiff's theory of the case. And in any event, if there were such error, it would only justify remanding for a new trial.

Much has been written and could be as to the importance of the right of trial by jury and of the desirability of courts respecting and safeguarding it as one of the fundamental rights. A good example is the statement made thereon by Justice Murphy in Jacob v. City of New York:[2]

> The right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence which is protected by the Seventh Amendment. A right so fundamental and sacred to the citizen, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts.

This is equally true in our state courts and under our state constitution.[3]

The true test of respecting and safeguarding this so often praised right is not in doing so when the courts agree with the jury verdict, but when they do not. If the jury verdict is set aside whenever the court does not agree with it, then the jury trial is but a delusion, a false promise of justice, which is snatched away when justice requires fulfillment of the promise.

Based on what I have said herein I am impelled to reiterate: that in my judgment this reversal deprives the plaintiffs of their right of trial by jury and unjustly takes from them a verdict which in all fairness they are entitled to. I would sustain the jury verdict and the judgment of the trial court.

2. 315 U.S. 752, 753, 62 S.Ct. 854, 86 L.Ed. 1166 (1942).

