James **STEWART**, Appellant,

v.

Tom D. **GILMORE**, Appellee.

No. 20067.

United States Court of Appeals
Fifth Circuit.

Oct. 1, 1963.

Cameron, Circuit Judge, dissented in part.

Geo. M. Leppert, George W. Gill, Jr., New Orleans, La., for appellant.

No appearances entered for appellee.

Before PHILLIPS,* CAMERON and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

In this action James Stewart, a Negro who had been a sharecropper for many years in West Feliciana Parish, Louisiana, alleges that Thomas D. Gilmore, the defendant, pistol-whipped him, without provocation, and forced him to flee for his life to Mississippi.

In 1956 Stewart raised cotton on a halves-agreement with Gilmore. Stewart had a lot of irons in the fire. He worked twenty acres here in potatoes, and seventeen acres there in corn, and he did a little carpentry on the side. Stewart and Gilmore had words over the cotton crop. Gilmore felt that Stewart was neglecting it. Stewart had a wife and fourteen children to help pick the cotton; still, it was getting ruined from not being picked.

To make bad matters worse, on Labor Day morning Stewart came riding through the lead rows, the headlands, of Hazelwood Plantation "hollering and carrying on and all that sort of stuff". This was too much for Gilmore to take. As he said on the stand: "I don't allow no whooping and hollering in the field when people are trying to work. When I went out on the road [to find Stewart], he was not there. I drove around to this little store. * * * His car was sitting out there in front." The store was a typical country store, Matt Gilmore's grocery store at Laurel Hill, near Clinton. Gilmore walked into the store, in his hand the loaded "38" he usually carried in his pick-up truck.

Stewart had gone to the store to buy a sack of flour. When he went in, his wife and four of the older children stayed in the car. He came out, put the flour in the car, then went back for a pound of coffee. Matt Gilmore, the proprietor, was reaching for the coffee and Stewart was drinking a Coca-Cola, when Tom Gilmore, without word or warning, walked in and struck Stewart across the back of the head with the pistol. He hit Stewart several times more on the head and also on the back when Stewart retreated. Stewart ran out of the store, "blood all over his face, all over his head and down his eyes and all around him". After circling the building at least twice, with Gilmore at his heels, pistol still in hand, Stewart took off for the woods. That night he went to New Orleans where he was given emergency treatment at Flint-Goodrich Hospital. Stewart never went back to his home in West Feliciana, except secretly at night, preparatory to moving his family, first to New Orleans and then to Picayune, Mississippi.

That was what happened, according to Stewart. The five members of Stewart's family who were eye witnesses corroborated his testimony. Gilmore's testimony corroborates a substantial portion of the account.

The Sheriff and the former Sheriff of West Feliciana testified for Gilmore, but the defendant did not produce Matt Gilmore or any other eye-witness, despite the fact that the incident occurred in a country store during a busy shopping period. On appeal, the defendant elected to file no brief.

Gilmore testified:

"I come into the door and there was a little narrow space and an ice box sitting there and when I come in this door, he come around that thing with a bottle in his hand and I knocked the bottle out of his hand and hit him with the gun, just a glance-like, and he went out the side door; and that was it.

"Q. Let me ask you one parting question: Can you give any reason why you—first of all, did you strike him over the head?

"A. I don't think I even hit him on the head.

"Q. Do you deny under oath that you ever hit him on the head?

"A. I don't recall. When I hit him the second time, it seemd to be glancing-like and he left.

* Of the Tenth Circuit, sitting by designation.

"Q. Do you deny that he ran outside of the store with you after him with the pistol?

"A. I ran out of the store, I don't deny that."

There is no evidence in the record of any provocation by Stewart. The relationship of the parties and the place where the beating occurred make it highly unlikely that Stewart would make a hostile move. Gilmore himself admitted striking Stewart, admitted hitting him a second time, and admitted chasing him out of the door—although he did not "recall" orbiting the building in hot pursuit of Stewart.

The case was tried in an atmosphere commendably free from improper appeals to prejudice. The attorney for Stewart made it plain that he did not regard the defendant as a Simon Legree. The attorney for Gilmore conducted his case on an equally high plane. The trial judge reminded the jury in his charge that "this is an action between two persons of equal standing in the community * * * of equal worth and * * * the law is no respecter of persons".

Nevertheless, a reading of the record satisfies this Court that there is no evidentiary basis for the jury's verdict. There is no doubt that, without any provocation, in a legal sense, the defendant gave the plaintiff a bad beating with a pistol.

Two hours after the jury retired, it came back for further instructions. The jury asked the court:

"If we, the jury vote for the plaintiff, can we vote for the plaintiff without damages?"

After receiving further instructions the jury again retired. Two hours after retiring the second time, the jury brought in a verdict for the defendant.

A decent regard for equal justice under the law to all persons undoubtedly moved the jury, at first, to uphold the rightness of Stewart's cause, even if it could not bring itself to go so far as to find that Tom Gilmore should pay damages to Stewart. When, as it appears, the jury overcame its nobler instincts and turned its back on the law and the facts, it was the duty of the trial judge to set aside the verdict.[1]

When the ends of justice require it, a federal trial judge has the power and the duty to set aside a jury's verdict, to grant a new trial, or to grant a judgment notwithstanding the verdict. The appellate court has a corresponding responsibility. This is a clear case where the verdict is against the evidence and should have been set aside.

1. The record shows that the trial judge had grave misgivings about the verdict. The plaintiff moved for a new trial or a judgment N.O.V. In the post-trial argument the district judge turned to counsel for the defendant and asked:

"Let me ask you this, Mr. Percy. Do you remember whether there was evidence in this case to indicate that there was any provocation on the part of this plaintiff to cause the defendant to pistol-whip him?"

Again, the court said:

"The other point that I wonder about from the evidence was the fact that he carried the gun in the car and yet, before he ever saw this man in the store, before he ever saw him with his hand up, yet, for some reason he took the pistol, ran up the steps with the pistol. * * * What I mean is why did he take the pistol and run up the steps into the store? Because he saw the coke bottle in the store? He saw him proceed to do something? * * * there is no doubt that there was evidence because the man admitted that he took the pistol and pistol-whipped him—and it boils down to whether or not the verdict of the jury is so contrary to the evidence as to shock the conscience of the Court. And I think it all hinges on whether or not there was any dispute about the fact that this man was injured physically because I think there is a big dispute about whether he was driven out of the state or whether or not there was provocation. I don't recall very much testimony on the question of provocation. I think the crux of the matter is whether or not there was such a flagrant disregard of that fact as to shock the conscience of the Court."

**392**

The judgment is reversed and remanded with directions that the district court enter judgment for the plaintiff notwithstanding the verdict, the issue of damages to be decided on remand. Open also on remand is the question whether the defendant's actions and threats, if any, drove the plaintiff and his family from the state.

CAMERON, Circuit Judge (concurring in part and in part dissenting).

I concur in the result insofar as the Court reverses the judgment below; but I dissent from that portion of the opinion which directs the trial court to enter a judgment for the plaintiff.