Jerald L. KILPACK, Individually and as Guardian ad litem for Jess Allred Kilpack, a minor, Plaintiff and Appellant,

v.

LaMark WIGNALL and David Wignall, Defendants and Respondents.

No. 16175.

Supreme Court of Utah.

Nov. 16, 1979.

David S. Cook, Bountiful, for plaintiff and appellant.

Stephen G. Morgan, Salt Lake City, for defendants and respondents.

STEWART, Justice:

Plaintiff, Jerald Kilpack, appeals the denial of his motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial. A jury found that defendants LaMark and David Wignall were not negligent in connection with an accident occurring on a farm that caused injuries to plaintiff's minor son, Jess Kilpack. The issue on appeal is whether the trial court erred as a matter of law in denying plaintiff's motions. We hold that the trial court erred in not granting the motion for a judgment notwithstanding the verdict.

The accident in which Jess Kilpack was injured occurred on June 21, 1976, during a visit by several children and their mothers to the home of LaMark Wignall. The two mothers of the children and Mrs. Wignall, who were sisters, went shopping together, leaving some of the younger children at the farm. Five of the young cousins, including Jess Kilpack, asked to go to the hay field with LaMark Wignall and his son, David. LaMark consented to their going. This was Jess and Joel Kilpack's first visit to a hay field. The children drove to the field in the bed of the Wignall's truck; after a ferris

wheel loader was hooked onto the truck for the hay gathering, they were told either to get in the cab or to stay out in the field away from the truck. The three younger children, Jess Kilpack and Debbie and Dennis Wilson, got in the cab with defendant David Wignall. Joel Kilpack and Danny Wilson stayed out of the truck, straightening hay bales in the field and intermittently jumping on and off the running board as the truck moved slowly through the field. LaMark Wignall was in the bed of the truck placing hay bales as they were collected. The truck stopped occasionally when bales became stuck. At one point Jess and Dennis crawled out of the window onto the running board. The older boys boosted Dennis back into the cab, but Jess remained on the running board. Although he had been told to stay inside, there was no effort made by either of the Wignall men to enforce that request. Jess rode on the running board for several minutes and then decided to jump off onto a hay bale as he had seen the older boys do. In doing so, he slipped and was run over by the back dual wheels of the truck. He suffered substantial injuries as a result.

Jess' father, plaintiff herein, acting both individually and as guardian ad litem, brought suit for damages, alleging negligence on the part of defendants. The first trial of this matter ended in a mistrial when counsel for defendants objected to voir dire by plaintiff's counsel as ·to whether any of the jurors had connections with a casualty insurance company.[1] The case was subsequently heard by a jury which was directed to answer questions on a special verdict form. The jury answered only two of the six questions; it found the defendants were not negligent and determined special damages sustained by the plaintiff to be $5,594.63, the exact amount incurred by him in medical and related expenses. Although there was testimony regarding the need for continuing medical treatment, no amount was attributed to such treatment; the jury found no general damages to have been sustained by the plaintiff. The plaintiff moved unsuccessfully for a new trial or for a judgment notwithstanding the verdict.

Plaintiff's primary contention on appeal is that reasonable minds could not differ as to a finding of defendants' negligence on the basis of undisputed evidence in the record. He also makes the following claims: that there was no basis for a finding of contributory negligence on the part of Jess Kilpack; that error in the proceedings below require the granting of a new trial; that it was error for the lower court to declare a mistrial and discharge the first jury called in this case; and that certain questions upon which defendant sought to voir dire the jury were material and proper.

In determining whether the trial court properly denied plaintiff's motion for judgment notwithstanding the verdict or for a new trial, we are guided by the following standards set out in *McCloud v. Baum*, Utah, 569 P.2d 1125, 1127 (1977):

> In reviewing a trial court's rulings pertaining to motions for a directed verdict or judgment n. o. v., this court reviews the evidence in the light most favorable to the non-moving party and to afford him the benefit of all inferences which the evidence fairly supports. If reasonable persons could reach differing conclusions on the issue in controversy, a jury question exists and the motion should be denied.

Also see *Koer v. Mayfair Markets*, 19 Utah 2d 339, 431 P.2d 566 (1967).

There is no substantial dispute in the evidence as to pertinent conversation and actions on the afternoon of the accident involving Jess. Four witnesses testified about the circumstances of the accident: Jess, who was 7 years old when he was injured; Joel Kilpack, his 9-year-old brother; and the two defendants, LaMark and David Wignall.

---

1. Although we do not rule on the propriety of the granting of the motion for mistrial, this Court has held that counsel for plaintiff is entitled to learn of a juror's interest in or connection with any insurance or casualty company that may be interested in the case, *Balle v. Smith*, 81 Utah 179, 17 P.2d 224 (1932). A properly phrased inquiry is not grounds for a mistrial.

Jess recalled no instructions or admonitions from either of the defendants when he crawled out of the window of the truck. He said that he had never ridden on the running board of a moving truck before and that he was on the running board for several minutes before he slipped off. He testified that from where he stood he could see David driving the truck.

Joel testified that he did not hear LaMark or David say anything to him about riding on the running board, nor did either of the defendants caution the children at the time the older boys boosted Dennis back through the window. Joel said that nothing was said about his and David's running from the truck while it was in motion to straighten bales of hay in the field. Joel testified that both of the defendants were in his view at various times, but that they did not caution him or say anything about the children's activities.

In his testimony, David Wignall, who was 20 at the time of the accident, recalled that when the children had asked to go to the field, LaMark had merely said something like "I don't care." He did not remember any cautionary instructions given the children about how to behave while the farm machinery was in operation. David testified that he observed the older boys climbing on the running board and jumping off to straighten hay bales and then returning to the truck. After the smaller children in the cab had crawled out the window, David said he told them to get back in the cab, and two of them did. He did not stop the truck while the children were going out of or in the window, and he did not require Jess to get back inside. He admitted that his attention was directed almost absolutely to getting the bales in the loader straight.

LaMark Wignall testified that he had been a school teacher and was aware of the nature and propensities of children ages six to nine. As to the instructions he had given the children, he stated that he told them upon arriving at the field that they could not ride in the back of the truck since hay would be coming in there and that they would have to get in the cab or clear out in the field. He later observed the younger children on the running board but did not reprimand them, give them any instructions, or take any other action at that time.

In reviewing the facts of this case, even in a light most favorable to the defendants, the complete absence of any effective precautionary measures is appallingly apparent. Defendants had the duty of exercising not only reasonable care under the circumstances, but even, as described in the instructions to the jury, "greater caution for the protection and safety of a young child than for an adult person."

The trial court instructed the jury that negligence was "the failure of a person to do something that a reasonably careful person would do, or the act of a person in doing something that a reasonably careful person would not do, measured by all the circumstances then existing." The jury was further instructed as follows:

It is the duty of the driver of a motor vehicle to use reasonable care under the circumstances in driving that vehicle to avoid danger to himself and others and to observe and be aware of the conditions at the time and place and under the circumstances then existing.

In this connection it is necessary to exercise greater caution for the protection and safety of a young child than for an adult person. One dealing with children must anticipate the ordinary behavior of children. The fact that they usually cannot and do not exercise the same degree of prudence for their own safety as adults, they often are thoughtless and impulsive, imposes a duty to exercise a degree of vigilance and caution commensurate with such circumstances in dealing with children.

This Court in *Rivas v. Pacific Finance Co.*, 16 Utah 2d 183, 185, 397 P.2d 990 (1964), stated as a corollary to the requirement that a child exercise that degree of care appropriate for his age, "that when a child is known to be in a situation of possible danger, there is a duty to observe extra caution for his safety." The Court then explained (*id.*):

This is but a particularized application of the usual standard requirement of due care under the circumstances, the modifying circumstance being the fact that a child is involved.

Other courts have also required the exercise of greater caution when one is dealing with a young child. See *Shannon v. Butler Homes*, 102 Ariz. 312, 428 P.2d 990 (1967); *Schwartz v. Helms Bakery Ltd.*, 67 Cal.2d 232, 60 Cal.Rptr. 510, 430 P.2d 68 (1967).

■ It is obvious that it is hazardous for small children to ride on the running board of an erratically moving hay truck immediately ahead of the dual rear wheels. Defendants had a duty to observe the circumstances surrounding the children's activities and "to exercise a degree of vigilance and caution commensurate with such circumstances in dealing with children." The law does not provide a lesser or different standard for farmers whose families may frequently participate in farming activities that involve potentially dangerous machinery, nor does it prescribe different standards of care for business people or teachers or anyone else. The standard is simply that care that would be taken by a reasonably prudent person in the circumstances. The dangers inherent in farming operations require the taking of precautions that would be taken by any reasonably prudent person.

In dealing with the children in this case, the law imposed on the Wignalls a duty of reasonable care for the children's safety. A reasonably prudent person, in the position of LaMark and David, must necessarily have foreseen the possibility of injury from a child stumbling, or falling, or being pushed into the path of the machinery if care were not exercised to keep the children either in the cab or away from the machinery.

The care to be exercised in a particular case must be proportionate to the seriousness of the consequences which are reasonably to be anticipated as a result of the conduct in question. *Bronson v. Kansas City* (Mo.App.) 323 S.W.2d 526 (1959). Other factors also bear on the question of a defendant's failure to exercise his duty of

due care. In the instant case these include such considerations as Jess' youth—he was just a few weeks past his seventh birthday; defendants' knowledge of Jess' inexperience with farming operations; the defendants' awareness of inherent dangers; and the fact that controlling the children's behavior did not present an unduly burdensome responsibility in light of apparent risks. It is clear—indeed indisputable—that Jess Kilpack was unreasonably and foreseeably exposed to a risk of serious injury by the defendants' failure to enforce reasonable instructions or safety rules. Whatever evidence there was of defendants' exercise of due care was, in the words of *McCloud v. Baum, supra,* "so slight and unconvincing as to make the verdict plainly unreasonable and unjust" and no finding of contributory negligence could be supported by the evidence so as to satisfy reasonable minds.

This Court stated in *FMA Acceptance Co. v. Leatherby Insurance Co.*, Utah, 594 P.2d 1332, 1335 (1979):

> Issues of negligence ordinarily present questions of fact to be resolved by the fact-finder. It is only when the facts are undisputed and where but one reasonable conclusion can be drawn therefrom that such issues become questions of law. [Citations omitted.]

See also *Gerdom v. Gerdom*, Wyo., 444 P.2d 34 (1968); *Elmer v. Vanderford*, 74 Wash.2d 546, 445 P.2d 612 (1968). The only reasonable conclusion to be drawn from the evidence in this case is that the defendants failed in their duty to do what a reasonably careful person would do to avoid a foreseeable risk of substantial magnitude to children not mature enough to fully realize the hazardous nature of their activities. Although defendants have suggested that Jess' injuries came about as a result of one of those things that "just happen" and no one is to blame, Jess should not have been allowed by the defendants to ride unsupervised on the running board, and his accident is directly attributable to the defendants' breach of their duty.

We note that a young child is generally presumed to be incapable of contributory

negligence. In *Nelson v. Arrowhead Freight Lines*, 99 Utah 129, 104 P.2d 225, 228 (1940), this Court stated:

> It has been generally recognized that children of tender years are so far undeveloped as to be relieved of the charge of negligence; that during another period in their infancy there is rebuttable presumption against their capacity to understand and avoid danger; and that in the later years of infancy there is rebuttable presumption that they are chargeable with the same degree of care as are adults. Ordinarily a child under seven years of age is conclusively presumed not guilty of contributory negligence. Between the ages of seven and fourteen, in the absence of showing to the contrary, an infant is generally assumed not to have the same consciousness of danger and the same judgment in avoiding it as an adult. Above the age of fourteen, in the absence of a showing to the contrary, an infant is generally charged with having attained that development which imposes upon him the same degree of care as an adult.

See also *Morby v. Rogers*, 122 Utah 540, 252 P.2d 231 (1953).

█ The jury in this case did not answer the questions on the special verdict form as to negligence on the part of Jess. We find, however, that the evidence in this case does not rebut the presumption against Jess' capacity to understand and avoid the danger he was exposed to, and Jess was therefore, as a matter of law, not contributorily negligent.

We hold as a matter of law that defendants breached their duty of due care to Jess Kilpack and that their negligence was the proximate cause of Jess Kilpack's injuries.

In *Stewart v. Gilmore*, 323 F.2d 389, 391 (5th Cir. 1963), the court stated: "When the ends of justice require it, a . . . trial judge has the power and the duty to set aside a jury's verdict, to grant a new trial, or to grant a judgment notwithstanding the verdict. The appellate court has a corresponding responsibility." See also *Weeks v. Latter-day Saints Hospital*, 418 F.2d 1035 (10th Cir. 1969). Accordingly, our duty requires that we set aside the verdict and the judgment of no cause of action and direct that judgment notwithstanding the verdict be entered for plaintiffs on the issue of liability. We do not reach other issues raised by appellant as they are unnecessary to the determination of this case.

Reversed and remanded for entry of a judgment notwithstanding the verdict and for further proceedings not inconsistent herewith. Costs to Appellant.

MAUGHAN and HALL, JJ., concur.

WILKINS, J., concurs in the result.

CROCKETT, Chief Justice (dissenting):

The main opinion itself fairly, clearly and adequately sets forth both the facts and the applicable law to indicate these propositions: that the trial court correctly perceived the total situation to present a question upon which reasonable minds may differ and which therefore should be submitted for determination by the jury; that he fairly and properly instructed the jury as to the defendant's duty to "exercise greater caution for the protection and safety" of the children than would be required for adults; that after hearing all of the evidence on both sides and due deliberation thereon, the jury found that the defendants were not negligent; that upon the same foundation, the trial court also further deliberated thereon and gave approval to that finding by refusing to grant the motion for judgment notwithstanding the verdict, or for a new trial.[1]

It is my judgment that there was no prejudicial error committed; and that by ruling to the contrary, this Court but intrudes into and usurps the prerogative of the jury to find the facts and deprives the defendants of the right of trial by jury which it is the duty of this Court to safe-

---

1. That this adds solidarity to the verdict, see *Prince v. Peterson*, Utah, 538 P.2d 1325 (1975); and see also *Hales v. Peterson*, 11 Utah 2d 411, 360 P.2d 822 (1961).

guard.[2]  I think the verdict and judgment should be sustained.

---

2.  See *Rivas v. Pacific Finance Co.*, 16 Utah 2d 183, 397 P.2d 990; and to avoid repetition herein, see dissent in *DeMille v. Erickson*, 23 Utah 2d 278, 462 P.2d 159 (1969), and authorities cited therein, including a good statement by Justice Murphy in *Jacob v. City of New York*, 315 U.S. 752, 62 S.Ct. 854, 86 L.Ed. 1166 (1942).

In the *DeMille* case, it was the plaintiff (on behalf of two orphaned children) whom I thought was unjustly deprived of a jury verdict fairly arrived at.  In this instance, it is the defendants who also have rights and should be fairly treated, that are unjustly dealt with.