*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2015 UT 79**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

COREY AND CAROL NIELSEN, for and in behalf of C.N., a minor,
*Appellees,*

*v.*

WADE AND LAURA BELL, on behalf of B.B., a minor
*Appellants.*

No. 20131047
Filed March 24, 2016

On Appeal of Interlocutory Order

Third District, Salt Lake Dep't
The Honorable Denise P. Lindberg
No. 120903223

Attorneys:

Daniel F. Bertch, Kevin K. Robson, Darren A. Davis,
Nathan Langston, Salt Lake City, for appellees

Peter H. Christensen, Kathryn T. Smith, Salt Lake City,
for appellants

JUSTICE DURHAM authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, and JUDGE ROTH joined.

ASSOCIATE CHIEF JUSTICE LEE filed a dissenting opinion.

JUSTICE PARRISH did not participate herein. Court of Appeals
JUDGE STEPHEN L. ROTH sat.

JUSTICE DURHAM, opinion of the Court:

### INTRODUCTION

¶1     In this appeal we must decide whether there is a minimum
age below which a child is conclusively deemed incapable of
negligence under Utah's common law, and if so, what that minimum
age is. We hold that children under the age of five, as a matter of
law, may not be held liable for negligence.

## BACKGROUND

¶2     Ms. Nielsen was babysitting a boy who was four years and nine months old. The boy threw a toy rubber dolphin at her, striking her in the eye. Ms. Nielsen had previously received a cornea transplant, and, tragically, the impact caused her to lose all vision in that eye.

¶3     Ms. Nielsen sued the boy's parents for negligent supervision. She also sued the four-year-old boy for negligence. The defendants moved for summary judgment, and Ms. Nielsen conceded that she had no evidence that the boy's parents had been negligent. She argued, however, that a dispute of material fact precluded summary judgment on the negligence claim against the boy. Ms. Nielsen further asserted that a four-year-old boy could be liable for negligence under Utah law. The district court agreed, ruling that it could not find as a matter of law that the boy was incapable of negligence. The court therefore granted summary judgment on the negligent supervision claim against the parents and denied summary judgment on the negligence claim against the child.

¶4     We granted a petition for interlocutory review of the portion of the district court's order denying summary judgment on the claim against the child. We review *de novo* the district court's legal determination that a four year old may be held liable for negligence. *See Daniels v. Gamma W. Brachytherapy, LLC,* 2009 UT 66, ¶ 46, 221 P.3d 256 (interpretations of the common law reviewed for correctness).

## ANALYSIS

¶5     State courts have adopted a variety of approaches when determining whether young children may be held liable for negligence. Some states reject fixed age limits, resolving the issue of a child's capacity to be negligent as a matter of law only where "reasonable minds could not differ on the matter." *Lester v. Sayles*, 850 S.W.2d 858, 866 (Mo. 1993). But "the overwhelming majority of jurisdictions support the idea of some minimum cutoff age." RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 10 reporters' note, cmt. d (AM. LAW INST. 2010). Courts in these states have adopted different cutoff ages for liability, variously holding that children under seven, six, five, or four may not be negligent as a matter of law. *Id.*

¶6     In order to determine whether the four-year-old defendant in this case may be held liable for negligently throwing a toy at Ms. Nielsen, we assess which of these approaches to the liability of young children most closely matches this court's

precedents. Ms. Nielsen contends that Utah should not recognize a fixed age cutoff for negligence liability. The four-year-old defendant, on the other hand, asserts that our precedents hold that children under the age of seven are conclusively presumed to be incapable of negligence. Alternatively, the defendant argues that we have recognized that children under the age of five may not be held liable for negligence.

¶7    We reject the defendant's contention that this court has held that children under seven may not be negligent. We agree, however, with the defendant's alternative argument that children under the age of five may not be liable for negligence. We therefore reverse the district court's order denying summary judgment on the negligence claim against the four-year-old defendant.

## I. THE ILLINOIS RULE

¶8    The defendant first contends that Utah has adopted the Illinois rule regarding the liability of young children for negligence. Under this rule, children under seven are deemed incapable of negligence; for children between seven and fourteen, there is a rebuttable presumption against a child's capacity for negligence; and for adolescents fourteen years old and above there is a rebuttable presumption of capacity for negligence. RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 10 cmt. b (AM. LAW INST. 2010). The Illinois rule is followed in about a dozen states. *See id.* § 10 reporters' note, cmt. b.

¶9    This court first referenced this rule in *Nelson v. Arrowhead Freight Lines*, 104 P.2d 225, 228 (Utah 1940). But although the *Nelson* court stated that "[o]rdinarily a child under seven years of age is conclusively presumed not guilty of contributory negligence," this pronouncement was pure dictum.[1] *Id.* The minor accused of contributory negligence in that case was sixteen—well above the

---

[1] While the child accused of negligence in this case is a defendant, the issue of a child's capacity to be negligent has most often been addressed in cases where the defendant has asserted that a child plaintiff should be charged with contributory negligence. These contributory negligence cases are relevant to this case because the capacity for negligence of a child defendant and a child plaintiff is measured by the same standard. *See* RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 10 cmt. e (AM. LAW INST. 2010); *see also Rowe v. Sisters of the Pallottine Missionary Soc'y*, 560 S.E.2d 491, 498 (W. Va. 2001) (comparative negligence defense requires proof of each of the elements of negligence).

seven-year cutoff age. *Id.* at 227. Moreover, the sixteen-year-old plaintiff's capacity to be negligent was not at issue. Instead, the plaintiff argued on appeal that she was entitled to an instruction informing the jury that she should be held to the standard of care of persons of similar age, capacity, and experience. *Id.* Therefore, any rule regarding the age when a child may be held liable for negligence, or any rule regarding a presumption of either incapacity or capacity for negligence, was not relevant to the outcome of the case.

¶10     We specifically held that the *Nelson* court's articulation of the Illinois rule was dictum and declined to follow it. In *Mann v. Fairbourn*, this court had to decide whether a five-and-a-half-year-old boy could be contributorily negligent in an accident that caused his death. 366 P.2d 603, 604, 606 (Utah 1961). We acknowledged our prior statement in *Nelson* that children under seven may not be negligent, but reasoned that "the statement was mere dictum inasmuch as the plaintiffs in that case were 16 and 20 years at age" and that "[s]uch a rule of law has not been observed by this court in other cases." *Id.* at 606. The *Mann* court held that the capacity for negligence of the five-year-old plaintiff was a factual inquiry to be resolved by a jury. *Id.* In subsequent cases we continued to ignore the *Nelson* dictum and held that a jury should decide whether a six-and-a-half year old and a child just under six had the capacity to be negligent. *Donohue v. Rolando*, 400 P.2d 12, 13–14 (Utah 1965); *Rivas v. Pac. Fin. Co.*, 397 P.2d 990, 991–92 (Utah 1964).

¶11     Despite this court's refusal to apply the Illinois rule, however, we later used at least a portion of that rule. In *Kilpack v. Wignall*, we had to determine as a matter of law whether a seven year old had the capacity to be negligent. 604 P.2d 462, 463, 465–66 (Utah 1979). The *Kilpack* court ignored our caselaw that either explicitly rejected or disregarded the *Nelson* dictum and quoted the *Nelson* opinion's articulation of the Illinois rule. *Id.* at 466. Because the child plaintiff in *Kilpack* was seven, this court then applied a presumption that he was incapable of contributory negligence. *Id.* We held that because no evidence was presented to rebut this presumption of incapacity, the seven-year-old plaintiff was not negligent as a matter of law. *Id.*

¶12     The holding of the *Kilpack* opinion, however, does not control in this case. In *Kilpack*, we applied the Illinois rule's rebuttable presumption that children between the ages of seven and fourteen are incapable of negligence. We had no occasion to apply the rule's conclusive presumption that children under seven are not liable for negligence. Indeed, when this court has been presented

with claims that five and six year olds have been negligent, we have held that the child's capacity for negligence was a jury question. *Donohue*, 400 P.2d at 13–14 (six-and-a-half-year-old child); *Rivas*, 397 P.2d at 991–92 (child just under six); *Mann*, 366 P.2d at 604, 606 (five-and-a-half-year-old child).

¶13 We therefore reject the defendant's assertion that Utah has recognized a conclusive presumption that children under seven are incapable of negligence.[2] Statements we have made to this effect are dicta, and this court has explicitly refused to follow this rule when the issue has been squarely presented. *Mann*, 366 P.2d at 606.

## II. THE RESTATEMENT RULE

¶14 Although this court has never held that children under seven may not be held liable for negligence, we have recognized that there is an age at which a child is "so young and immature as to require the court to judicially know that he is not responsible for his act." *Donohue v. Rolando*, 400 P.2d 12, 14 (Utah 1965). But we have not yet explicitly held what the cutoff age for negligence liability is. This court has previously decided this question on an ad hoc basis. An examination of our caselaw, though, reveals a dividing line between children under the age of five and children aged five and above.

¶15 As noted above, when we have examined the capacity of five and six year olds to be negligent we have held that it was a jury question unless reasonable minds could not differ on the issue. *Donohue*, 400 P.2d at 13–14; *Rivas v. Pac. Fin. Co.*, 397 P.2d 990, 991–92 (Utah 1964); *Mann v. Fairbourn*, 366 P.2d 603, 604, 606 (Utah 1961). We have found only one opinion in which this court has assessed the capacity of a child under five to be negligent. In *Herald v. Smith*, a motorist struck a four-year-and-ten-month-old girl while she was crossing the street. 190 P. 932, 933 (Utah 1920). The girl sued the motorist for negligence. *Id.* at 932. After the trial, the district court directed a defense verdict after apparently concluding that the evidence could only support a finding that the child's negligence

---

[2] We do not resolve the question of whether Utah recognizes a rebuttable presumption that children under the age of fourteen are incapable of negligence. Our caselaw is in conflict on this point. The *Kilpack* court applied this presumption in a case involving a seven year old. But that case appears to contradict earlier cases addressing a child's capacity for negligence that rejected the Illinois rule and resolved this issue without referring to a judicially created presumption of either incapacity or capacity for negligence. *See Donohue*, 400 P.2d at 13–14; *Rivas*, 397 P.2d at 991–92; *Mann*, 366 P.2d at 606.

had contributed to the accident. *Id.* at 933. On appeal, we held that the child could not be charged with contributory negligence: "A child of that age cannot, as a matter of law, be held to have appreciated the danger and is not presumed to conduct herself as an adult person would under similar circumstances." *Id.*

¶16 Granted, the procedural posture of *Herald* makes it a less than ideal signpost for determining the minimum age for negligence liability under Utah's common law. The *Herald* court reversed the trial court's legal conclusion that the child plaintiff had been negligent. Notably, we were not affirming a lower court's legal determination that a child had *not* been negligent. *Herald* indicates, however, that this court's conclusion that the four-year-old plaintiff was not capable of negligence was arrived at "as a matter of law." *Id.* In line with this legal determination, *Herald* further held that the resolution of a factual dispute at trial as to whether the motorist sounded his horn before the accident would not affect its conclusion that the child did not have the capacity to be negligent, reasoning that an "ordinary child of that age could neither appreciate nor understand the object sought or the reasons for giving such warning." *Id.* at 934. We therefore held that upon remand, the child plaintiff was entitled to submit to a jury the question of whether the motorist had negligently caused the accident, further indicating that the *Herald* opinion had resolved the contributory negligence issue in favor of the child plaintiff as a matter of law. *Id.*

¶17 The *Herald* court's holding that a girl two months shy of her fifth birthday could not be negligent marks a dividing line with subsequent cases holding that five year olds could have the capacity to be negligent. *See Rivas*, 397 P.2d at 991–92; *Mann*, 366 P.2d at 604, 606. This division matches the line drawn by the Restatement (Third) of Torts, which states: "A child less than five years of age is incapable of negligence." RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 10(b) (AM. LAW INST. 2010). The restatement rule is consistent with the rule adopted by the majority of states, which holds that children under the age of at least five (several states have a higher age limit) may not be held liable for negligence. *Id.* § 10 reporters' note, cmt. d. The restatement authors note that "only in a tiny handful of states are there actual cases that have permitted findings of negligence in the conduct of children who are less than five." *Id.*

¶18 A number of policy considerations support the restatement rule. Children under the age of five have a limited capacity to appreciate how their actions can cause harm to themselves or others and have an inadequate internal ability to

control impulses that may lead to injuries. *See id.* § 10 cmt. d. Absent an adequate ability to foresee consequences or control their behavior, "the possibility is slight that the conduct of a child under five is either deserving of moral criticism or is capable of being deterred by the application of tort rules." *Id.* Moreover, assessing a young child's capacity for negligence by placing the child on the witness stand to answer questions about her individual understanding of cause and effect, foreseeability, and capacity for impulse control is problematic to say the least. *See id.* This is especially true where the trial examination would likely occur years after the incident when the child has matured, making it difficult for the child to reclaim her earlier state of mind. Finally, the restatement rule recognizes that there is an age below which it is unseemly to subject a child to the judicial process or to adjudicate a child's liability for negligence.

¶19   Of course, categorical rules are, by their nature, imperfect. Children develop at different rates, and some four year olds are undoubtedly more mature than some five year olds. Despite the inherent drawbacks of age-based rulemaking, however, we must engage in this line-drawing process to some extent. Legislatures have done so by setting the age at which individuals can work, drive, marry, vote, serve in the military, smoke, and drink alcohol, as well as establishing the age of consent. Courts also make hard, age-based rules. The Supreme Court has determined that the Constitution prohibits the execution of an "adolescent" who commits murder just days before his eighteenth birthday, but permits the death penalty for an "adult" who commits the same crime just days after turning eighteen. *Roper v. Simmons*, 543 U.S. 551, 578 (2005); *see also id.* at 574 (rejecting objections to drawing a hard line at eighteen). This court has also created age-based rules as part of the common law—finding that parent's waiver of a minor's prospective claim for negligence is unenforceable, for example. *Hawkins ex rel. Hawkins v. Peart*, 2001 UT 94, ¶ 13, 37 P.3d 1062. And although statutes now establish the age of majority, determining the age when individuals assume independent legal rights, such as the capacity to contract, was a common law function. 42 AM. JUR. 2D *Infants* § 4 (2010); RESTATEMENT (SECOND) OF CONTRACTS § 14 cmt. a (AM. LAW INST. 1981).

¶20   In each of these instances the advantages of uniformity, consistency, and efficiency justify a bright-line rule, despite its imperfections. Determining the appropriate age at which each of these rules should be applied on an individualized, case-by-case basis—e.g., conducting a review process to determine when every person is mature enough to vote or consent to sexual relations—would be so inefficient and create such uncertainty as to be

unworkable. Rejecting definitive age-based rulemaking also unduly impairs policy making concerning the appropriate ages for certain activities.

¶21    We conclude that the instances where it would be appropriate to hold a child under the age of five liable for negligence would be rare enough that the social costs of conducting an individualized inquiry are not justified. Litigants are entitled to some amount of certainty and consistency. And this court has the duty to consider the propriety of subjecting children of tender years to tort liability, or, when they are plaintiffs, denying them recovery for the negligence of others.

¶22    We therefore adopt the restatement rule that children under the age of five may not be held liable for negligence. The question of whether a child five or over is capable of negligence is reserved for the fact-finder, unless a court determines that no reasonable jury could disagree on the issue. Such a rule conforms with our precedents and promotes important public policies.

## CONCLUSION

¶23    We reverse the district court's order denying summary judgment in favor of the four-year-old defendant. We remand with instructions to grant summary judgment.

ASSOCIATE CHIEF JUSTICE LEE, dissenting:

¶24 The court today adopts a categorical rule exempting children under the age of five from a finding of negligence in tort. It bases that conclusion on both legal authority and its own assessments of cognitive psychology. I agree with some of the court's premises. I accept the need for a categorical age cutoff at some point. And I have no doubt that many children under the age of five are incapable of negligence in some activities. But I respectfully dissent from the court's adoption of a categorical cutoff at age five because I disagree with the conclusion that "the instances where it would be appropriate to hold a child under the age of five liable for negligence" are "rare enough that the social costs of conducting an individualized inquiry" into a child defendant's mental capacity for negligence "are not justified." Supra ¶ 21.

¶25 This is not a question for disposition "as a matter of law" by reference to an aging body of caselaw. It is, at bottom, a question of social science. The relevant field of social science (cognitive psychology), moreover, is one that has seen significant advances in recent years. For that reason it seems perilous to defer too quickly to the armchair assessments of a child's analytical capacity made by judges in decades past.

¶26 I would take a fresh look at the age at which a child may properly be charged with negligence. I would do so based on a careful assessment of the state of our current understanding of the field of cognitive psychology. Recent advances in that field undercut the premises of the standard endorsed by the majority. Cognitive psychologists do not view all children aged five or older as fully capable of the kind of thinking necessary to charge them with negligence; nor do they see all children four or younger as categorically incapable of that kind of thinking. Instead they generally agree that children begin to develop cognitive skills like planning and impulse control at about age three, and continue developing those skills as they grow older. And although experts in this field have identified developmental and environmental factors that explain why different children develop at different rates, they also generally agree that most children acquire the ability to engage in planning and impulse control by the age of eight.

¶27 With this in mind, I would reject the age five cutoff adopted by this court and others. I would embrace instead a framework that would deem all children under the age of three

incapable of negligence and also presume (subject to rebuttal by expert evidence) that those who are aged three to seven lack that capacity.

¶28 As noted below, I find nothing in the caselaw in this field that would sustain the cutoff endorsed by the court. The cases adopting a five-year (or seven-year) cutoff for negligence in other jurisdictions are based mostly on armchair assessments of cognitive psychology advanced by judges. To the extent the cases cite any literature from any relevant fields of expertise, moreover, the citations are to outdated science. And despite the majority's insistence to the contrary, our court has never held "'as a matter of law'" that a four-year-old is "not capable of negligence." *Supra* ¶ 16 (quoting *Herald v. Smith*, 190 P. 932, 933 (Utah 1920)).

¶29 Even if the cited case could be understood to have embraced such a holding, I would not be inclined to defer to it on this appeal. The *Herald* case is almost a century old. And our understanding of cognitive psychology has advanced markedly in the many decades since that decision. A reconsideration of the question of where to draw the line on an age cutoff for negligence is past due. I would do so here. And I would adopt a framework that would deem the four-year-old defendant in this case presumptively incapable of negligence, subject to rebuttal on remand by expert testimony to be presented by the plaintiffs.

I

¶30 The majority's approach finds support in judicial decisions of our sister states. But I cannot agree that *this court* has held that a child under the age of five is incapable of negligence as a matter of law. *See supra* ¶ 16 (discussing *Herald v. Smith*, 190 P. 932 (1920)). And in any event I would not defer to the outdated, unsupported analysis of this important question in the decades-old caselaw in this or other jurisdictions.

A

¶31 The majority correctly concludes that this court has never expressly adopted "a conclusive presumption that children under seven are incapable of negligence." *Supra* ¶ 13. And it rightly concedes that our past cases "have not yet explicitly held what the cutoff age for negligence liability is," but have instead "decided this question on an ad hoc basis." *Supra* ¶ 14. Yet the court also asserts that our cases have implicitly adopted "a dividing line between children under the age of five and children aged five and above." *Id.*

Specifically, the majority views our decision in *Herald v. Smith* as concluding "'as a matter of law'" that a four-year-old is "not capable of negligence." *Supra* ¶ 16 (quoting *Herald*, 190 P. at 933). And it insists that *Herald* "held that upon remand, the child plaintiff" in that case "was entitled to submit to a jury the question of whether the motorist had negligently caused the accident, further indicating that the *Herald* opinion had resolved" the question of the child's contributory negligence "in favor of the child plaintiff as a matter of law." *Id.*

¶32    I read *Herald* differently. The *Herald* court's analysis of the child plaintiff's capacity for contributory negligence had nothing to do with establishing a categorical age cutoff as a matter of law. In fact the court espoused the opposite view—that "[t]he degree of care required of a child must be graduated to its age, capacity, and experience, and must be measured by what might ordinarily be expected from a child of like age, capacity, and experience under similar conditions." 190 P. at 933-34 (quoting *Gesas v. O.S.L. R.R.*, 93 P. 274, 279 (Utah 1907)). To the extent *Herald* was endorsing a generally applicable rule, then, it was one counter to the age cutoff adopted by the court today—a rule under which the four-year-old plaintiff could not "be charged with contributory negligence" "[i]f it acted as might reasonably be expected of such a child" of her age. *Id.* at 934  (citation omitted).

¶33    The *Herald* court's assessment of the child plaintiff's contributory negligence was not based on a categorical analysis of the cognitive capacity of young children. It was based purely on the facts and circumstances of that case.

¶34    The *Herald* court's holding was a rejection of the theory of contributory negligence advanced by the defendant in the case. That theory was a stretch—that the defendant driver of a car "had a right to assume" that the child pedestrian "would not move forward" "when he blew the horn" on his car, and that the child plaintiff was therefore negligent because she disregarded the horn. *Id.* at 933. In rejecting that theory, the *Herald* court did not adopt a blanket rule of immunity. It concluded only that "[t]he defendant's duty to the plaintiff cannot be measured by what he might reasonably have expected to be the conduct of an adult person in such circumstances." *Id.*

¶35    In rejecting the defendant's theory of contributory negligence, moreover, the court was not assessing the cognitive

capacity of children in general; it was rejecting the defendant's theory of contributory negligence under the facts of that case. The court's analysis was as follows:

> Under the circumstances and facts of this case it is immaterial whether such alarm [the defendant's horn] was given or not. The plaintiff was a little girl not yet five years of age. The ordinary child of that age could neither appreciate nor understand the object sought or the reasons for giving such warning. If it made any impression at all upon her mind, she probably accepted it as for her amusement rather than anything else; in other words, we regard the fact as to whether defendant sounded the horn as immaterial. It would in no way relieve the defendant of the charge of negligence, if he was negligent in going forward after he observed the child crossing the street, nor would it charge the plaintiff with contributory negligence.

*Id.* at 934.

¶36 I find no basis in the above for the conclusion that the *Herald* court in any way established a "signpost for determining the minimum age for negligence liability under Utah's common law." *Supra* ¶ 16. Its only "signpost" was the proposition that a child is held to a standard "'graduated to its age, capacity, and experience," to be "measured by what might ordinarily be expected from a child of like age, capacity, and experience under similar conditions." *Herald*, 190 P. at 933-34 (citation omitted). And its holding that the child plaintiff in that case was not negligent "as a matter of law" was based on the court's analysis of the facts of that case, not an assessment of the cognitive capacity of four-year-olds in general.

¶37 In all events the *Herald* case is almost a century old. Even if it could be read to establish a hard age cutoff on the basis of the court's understanding of cognitive psychology, that question would surely be ripe for reconsideration in light of advances in our understanding in this field in recent decades.

B

¶38 As the majority indicates, the Restatement (Third) of Torts concludes that "[a] child less than five years of age is incapable of negligence." *Supra* ¶ 17 (quoting RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 10(b) (AM. LAW INST. 2010)). And a "majority of states" has embraced an age cutoff along these lines. *Id.* Some set

the cutoff at five, and others at age seven. But most state courts agree that children in this age range are categorically incapable of negligence. Only a "handful" deem children under the age of five capable of the kind of thinking that would render them eligible for a finding of negligence. *Supra* ¶ 17 (quoting RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 10 reporters' note, cmt. d).[1]

¶39 In my view, however, the number of these decisions far exceeds the depth of their analysis. The widespread notion of a young child's incapacity for negligence is rooted more in judicial tradition than cognitive science. Many courts have alluded to what they see as "common knowledge of the mental development of . . . children."[2] They view the cognitive capacity of a child as a matter of judicial notice, asserting (without citation to expert authority or literature) that children under the age of five (or sometimes seven) have not "developed the mental capacity for foreseeing the possibilities of their inadvertent conduct which would rationally support a finding" of negligence.[3]

¶40 Occasionally our judges have cloaked these conclusions in the legal-sounding garb of Latin phrases—deeming young children "*non sui juris*" (not their own master),[4] or described by the maxim "*quaedam personæ sui juris sunt, quaedam olicuo juri subjectæ*" (some

---

[1] *But see Beggs v. Wilson*, 272 A.2d 713, 714 (Del. 1970) (rejecting an age cutoff because "[i]n growing up, each child is physically unique, and the law should recognize this uniqueness"); *Lester v. Sayles*, 850 S.W.2d 858, 867 (Mo. 1993) (concluding that "[p]ositing a predetermined age at which negligence or fault can occur has little basis in reason or logic").

[2] *Christian v. Goodwin*, 10 Cal. Rptr. 507, 509 (Cal. Ct. App. 1961) (citation omitted).

[3] *Id.* (citation omitted) (holding that a child under the age of five is incapable of negligence); *see also Cox v. Hugo*, 329 P.2d 467, 469 (Wash.1958) (asserting, without reliance on any expert or scientific authority, that a child under the age of six "is a creature of impulse and impetuosity" and "has no habits of deliberation and forethought" (citation omitted)); *Swindell v. Hellkamp*, 242 So. 2d 708, 710 (Fla. 1970) (opining that children under six are "conclusively presumed to be incapable of committing contributory negligence").

[4] *Graham v. Rolandson*, 435 P.2d 263, 278 (Mont. 1967).

persons are independent, and some are subject to another).[5] But legal-sounding words cannot turn this question into a matter for legal analysis; the premise of the age cutoff for young children is a scientific question of cognitive psychology, not a proper subject of legal analysis or judicial notice.

¶41    Still, courts have long resisted challenges to the judicial prerogative of fixing a lower bound on a child's capacity for negligence. Some acknowledge "the arbitrary nature" of a hard cutoff at age five or seven, yet fall back on the notion that such cutoff "has been the law" for many decades.[6] Another went so far as to "agree . . . that the arbitrariness of the rule supports its abandonment," while "reluctantly conclud[ing] that the principle of *stare decisis* require[d] th[e] court" to retain it. *Appelhans v. McFall*, 757 N.E.2d 987, 991 (Ill. Ct. App. 2001).

¶42    To their credit, some courts have looked to the cognitive psychology literature in fixing an age cutoff for negligence. To the extent they have done so, they have relied principally on the research and publications of psychologist Jean Piaget.[7] Piaget grouped children into four rigid developmental categories; he placed children under seven in a category of children deemed "incapable of understanding the physical world" and "unable to foresee the consequences of action."[8] Piaget's analysis was respected in its day.[9]

---

[5] *Mangum v. Brooklyn City R.R. Co.*, 38 N.Y. 455, 459 (N.Y. 1868) (Mason, J.).

[6] *Graham*, 435 P.2d at 267.

[7] *See generally* BÄRBEL INHELDER & JEAN PIAGET, THE GROWTH OF LOGICAL THINKING FROM CHILDHOOD TO ADOLESCENCE (1958); Lisa Perrochet & Ugo Colella, *What A Difference A Day Makes: Age Presumptions, Child Psychology, and the Standard of Care Required of Children*, 24 PAC. L.J. 1323, 1351 (1993) ("The view among courts that young children are incapable of caring for their own well-being probably emerged from the influence of the developmental portrait painted by Piaget."); *see also Tyler v. Weed*, 280 N.W. 827, 832 (Mich. 1938) (relying on the research of Piaget and others, which "brought a new light upon the mysterious mind of the child").

[8] Perrochet & Colella, *supra* note 7, at 1335–36.

[9] Perrochet & Colella, *supra* note 7, at 1334 (noting that "[p]rior to the 1970s, the work of Swiss Psychologist Jean Piaget was the dominant paradigm among developmental psychologists").

But cognitive psychology, not surprisingly, has seen substantial developments in the past few decades. And for decades Piaget's approach has been viewed as rooted in outdated notions of rigid, universal phases of child development.[10]

¶43 For these reasons I would not base a decision in this case on existing caselaw. However widely accepted, the notion of a hard age cutoff at age five finds no reasoned basis in the caselaw. I would therefore take a fresh look at the question of a child's cognitive capacity for negligence by examining the relevant literature in the field of cognitive psychology.

II

¶44 The majority seeks to root its age cutoff in assertions about cognitive psychology. It claims that "[c]hildren under the age of five have a limited capacity to appreciate how their actions can cause harm to themselves or others and have an inadequate internal ability to control impulses that may lead to injuries." *Supra* ¶ 18. And it insists that "[a]bsent an adequate ability to foresee consequences or control their behavior, 'the possibility is slight that the conduct of a child under five is either deserving of moral criticism or is capable of being deterred by the application of tort rules.'" *Id.* (quoting RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 10 cmt. d (assuming, without citing support in social science literature, that "by the time children reach the age of five, moral rules are becoming internalized, rather than being controlled by external sources")).[11]

---

[10] *Id.* at 1336 (explaining that "Piaget's views have been challenged by cognitive psychologists").

[11] The Restatement asserts that "modern developmental psychology tends to divide the years before adulthood into several phases"—birth to two, two to six, six to eleven, and eleven to eighteen. *Id.* § 10 cmt. b. But there is very little that is "modern" about the Restatement's notions of cognitive psychology. Its "phases" are based on the outmoded thinking of Piaget, who adopted similar age cutoffs. *See* Perrochet & Colella, *supra* note 7, at 1335–36. So the Restatement seems suspect for reasons identified herein. *See infra* ¶¶ 46–50. And it also seems problematic for another reason: It adopts a cutoff at an age (five) that falls *in the middle* of one of its listed phases of development. RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 10 cmt. b.

¶45    I do not doubt that the majority's premises hold for many children under the age of five in some circumstances. But I cannot agree that most all such children are incapable of the kind of thinking required to sustain a finding of negligence—or that so many of them lack that capacity that we should endorse a hard five-year cutoff as a matter of law.

¶46    In recent decades cognitive psychologists have repudiated the notion that children become capable of the kind of thinking necessary to sustain a finding of negligence only at the age of five. Experts in this field have come to understand that "children vary widely in their mental development and do not move magically from one developmental stage to another simply because they have celebrated a birthday."[12] Importantly, cognitive psychologists have identified an age younger than five at which some young children begin to acquire the mental attributes necessary to be held morally culpable and to be deterred from such behavior. They generally agree that some children acquire those attributes as early as age three.[13] And they have identified factors that affect the rate of development of such attributes in individual children—such as the physical development of the brain and the social environment that shapes cognitive human responses.[14]

¶47    To merit attribution of fault, children must be able to foresee the consequences of their actions and avoid them by controlling their impulses. This involves the ability to plan—to "understand and anticipate the causal connection between actions and outcomes."[15] In order to plan, children "must (1) have the ability to understand cause and effect relationships in the physical world;

---

[12] Perrochet & Colella, *supra* note 7, at 1337.

[13] *See, e.g.,* Rochel Gellman, *Cognitive Development*, in 2 D.L. STEVENS' HANDBOOK OF EXPERIMENTAL PSYCHOLOGY 533, 537540 (3rd ed. 2002) (compiling studies showing increasing awareness of cognitive ability in children at age three or even earlier); John R. Best & Patricia H. Miller, *A Developmental Perspective on Executive Function*, 81 CHILD DEV. 1641, 1643-52 (2010) (discussing recent studies measuring inhibition in young children).

[14] Perrochet & Colella, *supra* note 7, at 134850; *see also generally* Tracey Fay-Stammbach et al., *Parenting Influences on Executive Function in Early Childhood: A Review*, 8 CHILD DEV. PERSP. 258 (2014).

[15] Perrochet & Colella, *supra* note 7, at 1339 (citations omitted).

(2) believe that actions produce outcomes in the physical world; and (3) have the ability to exercise self-regulation."[16] Young children vary widely in their capacity for this kind of thinking because they develop cognitive abilities at different rates.[17]

¶48 Core executive functions, including working memory, inhibitory control, and cognitive flexibility, are key components in brain development during preschool years.[18] "Executive functions . . . make possible [skills such as] mentally playing with ideas; taking the time to think before acting; meeting novel, unanticipated challenges; resisting temptations; and staying focused."[19] Individual components of executive function emerge before the age of three.[20] Primitive signs of working memory and inhibition can be observed in infancy, and experts have identified substantial variability in the development of this attribute among young children.[21] From age three and on, children typically undergo the most significant period of executive function development.[22]

¶49 Of particular relevance to a child's capability for negligence is the development of inhibition: "[I]nhibition is a necessary precursor to the forward-planning, self-regulating, goal-

---

[16] Id.

[17] Perrochet & Colella, *supra* note 7, at 1337 ("[C]hildren vary widely in their mental development and do not move magically from one developmental stage to another simply because they have celebrated a birthday.").

[18] *See generally* Adele Diamond, *Executive Functions*, 64 ANN. REV. PSYCHOL. 135 (2013); Nancy Garon et al., *Executive Function in Preschoolers: A Review Using an Integrative Framework*, 134 PSYCHOL. BULL. 31 (2008).

[19] Diamond, *supra* note 18, at 135.

[20] Garon at al., *supra* note 18.

[21] *See generally* Peter J. Anderson & Natalie Reidy, *Assessing Executive Functions in Preschoolers*, 22 NEUROPSYCHOL. REV. 345, 355 (2012).

[22] *See, e.g.,* HARV. UNIV. CTR. on the Developing Child, *In Brief: Executive Function* (2012), https://perma.cc/G3E8-G782 (noting that "executive function skills . . . begin to develop shortly after birth, with ages 3 to 5 a window of opportunity for dramatic growth in these skills").

directed, higher processes that integrated executive functions engender."[23] Studies show that there is rapid change in developing inhibitory control between the ages of three and five.[24] Most children are able to demonstrate inhibitory control by the age of five,[25] and a child's capacity for inhibition improves markedly through the age of seven.[26] So the ages identified in the caselaw are not entirely arbitrary. But the cognitive psychology literature does not support the notion that most all children under the age of five are incapable of inhibition. At least some children at younger ages have that capacity.

¶50    A child aged three or four may well possess sufficient capacity for executive functions like planning and inhibition to be held responsible for at least some kinds of basic life activities. And for me that is a sufficient ground for rejecting the five-year cutoff advanced by the majority. Our tort law, after all, is not just aimed at protecting the interests of defendants; it must also account for the interest of providing compensation to injured plaintiffs.

¶51    With the above in mind, I would adopt a tiered framework for assessing the negligence of children: (a) children under the age of three would be categorically immune from a finding of negligence; (b) children between the ages of three and seven would be subject to a presumption of incapacity for negligence—a presumption that could be rebutted by expert testimony establishing the individual child's capacity for the kind of executive functions (planning and inhibition) necessary to hold them responsible for the actions in question; and (c) children aged eight or older would be held to a standard of a reasonable child of like age, capacity, and experience under similar conditions. This framework seems to me to follow from the premises of cognitive psychology outlined above.

---

[23] Jacqui A. Macdonald et al., Age-Related Differences in Inhibitory Control in the Early School Years, 20 CHILD NEUROPSYCHOL. 509, 510 (2014).

[24] HARV. UNIV. CTR., *supra* note 22; *see also generally* Philip David Zelazo et al., *The Development of Executive Function in Early Childhood,* 68(3)*in* Monographs of the SOC'Y for Res. in Child Dev. 68(3) (2003).

[25] Macdonald et al., *supra* note 23, at 509; *see also* Anderson & Reidy, *supra* note 21; Livia Freier et al., *Preschool Children's Control of Action Outcomes*, DEV. SCI., Oct. 28 2015, at 13.

[26] Macdonald et al., *supra* note 23, at 509.

¶52    This framework would lead to an affirmance of the district court's decision in this case. Because the child defendant in this case was four years old, he should be entitled to a presumption that he is incapable of negligence; but the plaintiffs should also be entitled to present evidence aimed at rebutting that presumption. I would affirm and remand to give the plaintiffs a chance to present evidence of the defendant's capacity for the kind of thinking necessary to hold him responsible for the injury he caused by throwing a toy at his babysitter.

¶53    That act was a fairly simple one. At least some four-year-olds seem capable of anticipating the consequence of the basic act of throwing something at another person, and of controlling their impulse to do so. In any event I would leave such questions for case-by-case disposition by the court on the basis of expert testimony instead of foreclosing the possibility as a matter of law.

¶54    I acknowledge the complication introduced by the likely gap between the date of the tort and the time when the child's cognitive capacity is assessed by the court. *See supra* ¶ 18. But the majority overstates the problem. Under my framework the child's capacity would not be judged on the basis of trial testimony from the child as to "her individual understanding of cause and effect, foreseeability, and capacity for impulse control." *Id*. It would be judged on the basis of expert testimony. And that testimony could often be judged as a matter of law on pretrial motions.

¶55    Expert analysis of a child's capacity for negligence would be complicated by the noted time gap between the tort and the decision by the trial judge. But the complication is hardly intractable. A cognitive psychologist could inquire into the child's history and experience and offer an opinion on the child's likely ability to engage in the sort of planning and inhibition necessary to be responsible at the time of the activity in question. And ultimately the presumption would go against allowing a suit to go forward. So if the time problem identified by the majority becomes too difficult, it will count against a determination of a child party's capacity for negligence.

¶56    The timing problem, moreover, is hardly evaded by the majority's approach. The problem remains for the children aged five or older left open to a finding of negligence by the court. So the question presented in this case should not be resolved on the basis of the timing problem identified by the majority. It must be resolved by our careful assessment of the age below which most all children are

incapable of the kind of thinking required to sustain a determination of negligence.

¶57    The answer to that question is a difficult one. Our current understanding of cognitive psychology suggests that the answer is age three. It also indicates that many children between the age of three and seven are similarly incapable. I would adopt a legal framework that reflects this understanding.

III

¶58    Few young children are likely to engage in the kind of risky activity that will often result in significant harm to others. And when they do, many would-be claimants are likely to cut them some slack for one reason or another—in recognition, for example, of their minimal capacity for culpability, or their limited resources (absent insurance) for payment of damages. In the rare case when a young child is brought to bar, however, our law should reflect the current understanding of cognitive psychology. The framework that I propose would accomplish that objective.

¶59    It would not, however, open any floodgates for child tort litigation. My framework would impose a presumption that sweeps *more broadly* than the majority's age cutoff. It would hold children aged three through seven presumptively incapable of negligence, subject to rebuttal by expert testimony.

¶60    For many children and many activities, this presumption would be difficult to rebut. But at least some young children are likely to be shown capable of understanding the likely consequences of the kind of basic activity at issue in this case—of throwing a toy at another person's face—and of controlling their impulses in such acts. I would not foreclose the possibility of such a determination as a matter of law.

¶61    I dissent from the majority's adoption of a cutoff at age five because I find no basis for it in the caselaw or in the relevant field of science. I also find the majority's focus short-sighted. Its analysis of the relevant policy considerations is focused exclusively on the question of a *defendant's* capacity for moral missteps. Yet tort suits are a two-way street. They are aimed not only at deterrence of unreasonable conduct but also at compensation for the injuries that are caused thereby. I would also consider the claimant's interest in compensation before we decide to cut off an entire category of claims. And because at least some children between the ages of three and seven are capable of planning and impulse control, I would

leave the door open to the possibility of compensating a plaintiff who is both injured by a child defendant and who can prove by expert testimony that the child is capable of negligence.

¶62 The majority's decision is also short-sighted in a second respect: It ignores the effect of its decision in cases initiated by child *plaintiffs*. If young children are mentally or morally incapable of negligence, they will not only be immune from suit as defendants; they will also be deemed incapable of fault when they initiate suit as plaintiffs.[27] That prospect raises the stakes for our decision today. I suspect that more children file suit as plaintiffs than are named in suits as defendants. If so, the predominant effect of today's decision will not be to restrict liability in suits involving children but to expand it. If no young plaintiff will ever have any fault attributed to him in a negligence suit, the defendant in such a suit will be left with full responsibility in every case no matter how minimal his degree of actual relative fault.

¶63 Consider a (presumably common) case involving a child pedestrian plaintiff and a somewhat older driver defendant. The driver defendant will be deemed 100 percent at fault in 100 percent of the cases—even if the defendant is barely negligent and the plaintiff is borderline reckless. So a driver who exceeds the speed limit by one mile per-hour will be 100 percent at fault even in a case filed by a plaintiff who recklessly darted into the roadway in full view of an oncoming car.[28] So long as the plaintiff is under the age of five, he can never have any fault attributed to him under the standard adopted today.

---

[27] *See* RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 10 cmt. e. ("The rules relating to children and negligence apply also to children and contributory negligence."); *Benallo v. Bare*, 427 P.2d 323, 325 (Colo. 1967) (finding children under six incapable of contributory negligence); *Swindell v. Hellkamp*, 242 So. 2d 708, 710 (Fla. 1970) (holding that children under seven are "conclusively presumed to be incapable of committing contributory negligence").

[28] *Swindell*, 242 So. 2d at 710 (concluding that a nearly five- year-old girl who darted into traffic could not be held contributorily negligent); *Benallo*, 427 P.2d at 325 (finding that six-year-old who darted across the street could not be held contributorily negligent); *Baker v. Alt*, 132 N.W.2d 614, 620 (Mich. 1965) (holding that a six-year-old who rode his bike against traffic at an excessive speed could not be held contributorily negligent).

¶64    That will hold for any plaintiff so long as the defendant is at least five years old. Thus, the prospect of full fault for the barely negligent defendant would hold if the hypothetical involves not an adult driver of a vehicle but a five-year-old operator of a bicycle or a motorized scooter. The five-year-old is 100 percent at fault as a matter of law even if his conduct is only barely unreasonable and the pedestrian's acts border on reckless.

¶65    I find these prospects troubling. And I see no legal or scientific basis for adopting the age five cutoff that will lead us down this path. I respectfully dissent.